## LEVERETT L. PHELPS *vs.* JAMES HUNT.

In a suit brought by an attorney for sundry professional services, after he had testified to the reasonableness of his charges, which the defendant claimed were exorbitant, he was asked on cross-examination what his customary charge per day for appearing before a justice of the peace was at the time. Held that the enquiry was admissible, although there was no item in his bill of particulars of that character.

Upon the question of the reasonableness of the plaintiff's charge for advice on a certain occasion, held that the remote and contingent consequences of following the advice could not be considered.

It is not enough that enquiries on cross-examination are pertinent to some matter testified to on the examination in chief, if such matter was in itself inadmissible, although not objected to at the time. Such enquiries, if objected to, must stand upon their own ground of relevancy.

Where such enquiries, being objected to, are ruled out as irrelevant, the party against whom the ruling is made can then ask the court to rule out the evidence already received in chief, so far as it was irrelevant; and if the court should refuse to do it, it would be ground for a new trial.

Original files in judicial proceedings, where offered in evidence merely to show that they exist, may be admitted on any satisfactory evidence of their identity.

But where judicial records are offered as such, and in proof of the facts which they purport to state, they must, if originals, be brought into court by the official custodian of them, who can testify as to their character; or copies, certified as true by such custodian, may be introduced.

A new trial will not be granted where a ruling of the court, however erroneous, has done no harm to the party seeking a new trial.

ASSUMPSIT, to recover for services as an attorney; brought to the Court of Common Pleas of New Haven County. A new trial having been granted in the case, (40 Conn. R., 97,) the case was referred to an auditor, who reported that there was nothing due the plaintiff. The plaintiff filed the following remonstrance against the acceptance of the report of the auditor.

1. The plaintiff having testified in chief that his charges in his bill of particulars were reasonable, was asked on cross-examination, what was his customary charge in 1870, per day, for appearing on trials before a justice of the peace. This question was objected to as irrelevant, but the auditor admitted it, and the plaintiff answered that it was $10.

2. The defendant claimed that he had sued the plaintiff before a justice of the peace in Stafford prior to the commencement of this suit, for the bill of shoes and cash allowed as a set-off on the bill of particulars, and recovered judgment for the same, and that the plaintiff had given certain testimony at the trial at Stafford as to the amount of his charges, and in support of this claim offered in evidence three separate papers, one purporting to be a writ and declaration indorsed with a memorandum, "issue for plaintiff, damages $100," and a statement that an appeal was taken and allowed therefrom to the next Superior Court, the second purporting to be the bill of particulars, and the third purporting to be a plea and notice; together with parol evidence that the three papers were the original files of said action at Stafford. The plaintiff objected to their introduction, on the ground that they were not the record nor a copy of the record of said suit, but the auditor admitted them in evidence.

3. The defendant testified in his direct-examination, that certain advice given him by the plaintiff and charged for in the bill of particulars, not to go up to Hartford to see Mr. Goodman, one of his creditors there, as Goodman had requested, was unwise, and that if he had so gone up, instead of following the plaintiff's advice, as he did, he could have secured an extension from Goodman and so avoided an attachment soon afterwards levied by him on the stock of boots and

shoes in the store formerly occupied by the defendant. It was admitted that the defendant had been a boot and shoe dealer in Meriden, and that before the advice was given he had sold out his stock in trade to Loren Foskett, of Worcester, his brother-in-law, and put him in possession; the consideration of said sale being the surrender of $2,000, in notes of the defendant held by Foskett, and that there was a private understanding between them that, if the defendant's creditors should attach the goods in Foskett's hands as the defendant's property, the sale should be cancelled and new notes for $2,000 given to Foskett by the defendant. The defendant testified on his direct-examination that, before Goodman attached, the latter met him in Meriden and told him that he would make him no trouble if he would come up to Hartford and talk the matter over and give a new note; and that this was after the sale to Foskett, and, being communicated to the plaintiff, was the occasion of the advice. On cross-examination he testified that at this interview in Meriden he told Goodman that he had sold out to Foskett. He was then further asked what he told Goodman about the sale, which question was objected to by the defendant as irrelevant, and excluded.

4. The defendant testified on his direct-examination that he lost money and credit by following the advice of the plaintiff, charged for in his bill of particulars, and was financially ruined thereby. On direct examination he testified that when he left Meriden in the winter of 1870–1871, he sold a house and lot there, which stood in his wife's name, for about $3,200; that the lot was bought with his wife's money, and that the house was built on it while he lived in Meriden. He was asked, on cross-examination, who paid for building the house; under the claim by the plaintiff that he intended to show that it in fact was paid for by the defendant out of his own funds, and did not belong to his wife, and that the lot was also the defendant's, and not the wife's; but the question was objected to by the defendant and excluded.

5. The defendant further testified, on his cross-examination, that he went directly from Meriden to Stafford, and set up a boot and shoe store there. He was then asked how much

money he invested in starting the business in Stafford, and also what was the largest bill for goods purchased for the business on credit which he ran up at Stafford. These questions were severally objected to by the defendant as irrelevant, and each of them were excluded.

The court (*Peck, J.,*) found the allegations of the remonstrance true, but insufficient, and rendered judgment for the defendant. The plaintiff brought the record before this court by a motion in error.

The bill of particulars in the case is given in full in the former report of the case, 40 Conn. R., 97.

*W. K. Townsend*, for the plaintiff.

*S. E. Fairfield* and *J. D. Ballou*, for the defendant.

Loomis, J. The errors assigned in the plaintiff's motion are all founded upon the refusal of the court to reject the report of the auditor for the reasons alleged in the remonstrance.

1. After the plaintiff had testified in chief that the charges in his bill of particulars were reasonable, the auditor allowed the defendant, against the objection of the plaintiff, to ask him on the cross-examination what his customary charge per day was in 1870 for appearing before a justice of the peace.

If this inquiry furnished any test of the reasonableness of the plaintiff's charges it was clearly admissible. The defendant's claim was that the charges were exorbitant, and the design of the question was to show the plaintiff's own estimate of the value of his services, and to apply to the charges some standard furnished by the plaintiff himself. It is true there is no such item as the question refers to in the plaintiff's bill, but it does not follow that the answer to the question objected to would furnish no standard of comparison. It may have appeared from the answer that the sum charged for a day's work before a justice of the peace was very small as compared with the charge in the bill for some simple advice that required no time or research and hardly partook of the

nature of legal advice at all; as, for instance, the advice not to go to Hartford on a certain occasion. We think the question was admissible.

2. The next question is, whether the judgment ought to be reversed because the auditor received in evidence the original files in a suit before that time brought by the present defendant against the plaintiff, before a justice of the peace in Stafford, to recover for the shoes and cash credited on the plaintiff's bill of particulars in this case.

If the files had been offered as a judicial record, for the purpose of proving by them the facts which they purport to state, it is clear that either the original files, if offered in evidence, should have been proved to be such by the testimony of the legal custodian of them, summoned to attend and bring them, or that a copy certified by such custodian as a true copy, should have been introduced. But the files were not offered for any such purpose, but merely to prove that they existed, a fact which could be proved by the papers themselves, accompanied by any sufficient parol evidence of their identity. The object for which they were introduced, as we understand the motion, was to show that, at a certain time, which appeared from the dates upon the papers, a certain trial was had before a justice of the peace, at which the present plaintiff, who was a defendant in that suit, gave certain testimony; the documentary evidence being merely introductory to and preparatory for the inquiries put to the plaintiff with regard to his testimony at the trial, showing the time, and occasion, and cause on trial.

But if the court erred in allowing the original files to be introduced, with such evidence as was offered of their identity, it was an error that did the plaintiff no harm, and therefore could not be a ground for granting a new trial. There is no reason why the defendant might not have shown by parol evidence that there was such a justice trial and the subject matter of it, for the purpose of explaining the fact that the present plaintiff was present and testified in a certain manner with regard to the matter in litigation. It was merely showing the occasion of his testimony, that occasion being a mere

fact, like the testimony itself, and requiring only ordinary parol evidence to prove it. It is as if the plaintiff had made certain statements in a town meeting on some subject under discussion; in that case it might be important for the purpose of making the evidence with regard to his statements understood, to show that there was such a town meeting and what the subject was that was under discussion, but there would be no necessity of proving by the town records the fact that such a meeting was called and held, and a particular motion introduced and discussed.

3. The three remaining points in the remonstrance may be considered together as belonging to one class. They all pertain to certain questions on the cross-examination of the defendant, which were excluded by the auditor, relating to the probable or possible effect of the plaintiff's advice upon the financial condition of the defendant. In one instance under this head it seems that the defendant in his testimony in chief, no objection being made, had stated that if he had not complied with the plaintiff's advice not to go to Hartford on a certain occasion to see one Goodman, who was one of his creditors, he might have secured from Goodman an extension of credit on the claim, and thereby have avoided the attachment of his goods to secure the claim which afterwards broke up his business and greatly injured him. And to add some plausibility to this claim he stated that, previous to said advice, he had met Goodman, who told him to come and see him about the claim and he would make him no trouble. On the cross-examination the plaintiff asked the defendant what he told Goodman about a sale of his goods to one Foskett, with a view, (as the plaintiff now claims in his brief,) of showing that Goodman was not put in possession of all the facts when he said he would make the defendant no trouble and that his promise could not have been relied upon. This question, being objected to by the defendant, was ruled out by the auditor.

It is obvious that this whole subject matter, both of the direct and cross-examination, was wholly irrelevant, and ought not to have been entertained at all.

It was simply a psychological speculation as to how Goodman would have acted if the defendant had seen him, and no court not endowed with the spirit of prophecy, combined with a capacity for mind-reading, could have determined that question; and if it could have been determined, the fact itself had no legitimate place in the case.

The remote and contingent consequences of the plaintiff's advice could not be considered. And this same principle will dispose of the other questions relating to the building of the defendant's house in Meriden, and whether he or his wife paid for it, and how much money he invested in his business at Stafford, and the largest amount of goods purchased by him on credit. It was all immaterial.

It is doubtless true that the inquiries ruled out on the cross-examination were in the main pertinent to the matter testified to in chief, and if the irrelevant matter in chief was allowed to have any effect it would have been more just and fair to have allowed a reasonable opportunity for cross-examination upon the same subject; and if, when the questions on the cross-examination were excluded, the plaintiff had asked the court to reject also all the kindred matter previously received, and the court had refused, the plaintiff would have had a just ground for a new trial. But no objection whatever was made to the testimony in chief, neither at the time it was offered nor afterwards.

The auditor seems to have allowed the parties to take their own course in the testimony until specific questions were raised on the cross-examination; and the decisions then made were according to law. The plaintiff seems to assume that if the cross-examination was pertinent to the examination in chief it necessarily makes the ruling erroneous.

This proposition we do not accept. Where the plaintiff stands on matters *stricti juris*, it must appear that the particular ruling complained of was erroneous in law. We cannot hold that it was error in law to rule out, objection being made, what it would have been error to admit, merely because the court had received without objection matter just as irrelevant before. The maxim, "*Similia similibus curantur*," has been

applied to some extent in the science of medicine, but the principle has never been recognized as applied to the cure of errors in law.

There was no error in the judgment complained of.

In this opinion the other judges concurred.