THE STATE OF CONNECTICUT *vs.* WILLIAM H. SEGAR.

First Judicial District, Hartford, March Term, 1921.

WHEELER, C. J., BEACH, GAGER, BURPEE and MALTBIE, Js.

To utter is to offer; and hence to utter a forged instrument is to offer it by some overt act, intending it to be received as good, whether it is accepted or not.

The defendant was convicted of the crime of uttering or publishing certain forged bank checks, upon an information which charged that such uttering or publishing was done at E in the county where the trial was had, and with the intent to defraud a bank located at E. It was not disputed that the defendant, at W, in another county, indorsed the checks in question to various persons with whom he had there been dealing, that these checks were drawn on the bank at E, that they were severally accepted by the persons to whom offered, the defendant receiving in each case money or goods to the amount of the face thereof, and that such persons deposited the checks in the bank at W, which collected for them the face amount thereof from the bank at E in regular course of business. *Held* that the utterance was complete on the making of the offer at W; that since the persons to whom the checks were indorsed purchased them outright and were in no proper sense the agents of the accused to cash them, the presentation to the bank at E could not be considered an utterance; and hence that, under the statute (§ 6628) requiring the

The State *v.* Segar.

offense to be tried in the county were committed, no conviction could be had in the county where the trial took place.

The State alleged that the accused had forged the name of C to the checks. The accused admitted that he had signed C's name to the checks, but his defense was that this signature was made by C's authority. The State offered in evidence C's written statement—which did not appear to have been made in the presence of the accused—to the effect that he had given no such authority, and this statement was admitted in evidence as an exhibit, without objection by the accused, who did, however, request the court to charge that it was not to be considered by the jury. *Held* that this request was properly denied, since the statement, although inadmissible as hearsay, if objected to, having come in without objection, was available for whatever it was worth on its face; and even if the request could be considered as equivalent to a motion to strike out, it came too late and was defective as giving no ground of objection.

Although summoned by the State and present during the trial as a witness, C was not called to testify by either side. The accused requested the court to charge that this raised a presumption against the State's claim that C had not authorized the accused to sign his name to the checks. *Held* that the court did not err in refusing so to charge, since such a presumption of fact against a party holding back evidence is not created unless there is an actual withholding, and where, as here, the witness is in court and equally available to be called by either side, neither can claim such a presumption against the other.

The accused offered evidence to show that since the arrest C had stated, on one or more occasions, that he had authorized the accused to sign his name to checks. The court excluded this evidence on the ground that C had not testified, and the State, in this court, justified its exclusion on the basis of the *post litem motam* rule. *Held* that such rule operated only to exclude, as made after action brought, certain hearsay statements otherwise admitted under a modification of the hearsay rule, and had no application to contradictory statements made out of court by a witness and offered for the purpose of attacking credit; that the State, having had the benefit of C's hearsay statement that he had not given such authority, could not object to rebutting evidence, admissible if this statement had been properly before the jury through C's testimony, without withdrawing the statement, and that the accused, although he had waived his right to object to the admission of the statement, should not be deprived of the opportunity of showing a contradictory statement to weaken or destroy its effect.

Argued March 4th—decided July 22d, **1921.**

INFORMATION charging the accused with uttering forged banks check, brought to the Superior Court in Middlesex County and tried to the jury before *Curtis, J.*; verdict and judgment of guilty, and appeal by the accused. *Error and cause remanded.*

*William A. King* and *Samuel B. Harvey,* for the appellant (the accused).

*Arnon A. Alling,* Special State's Attorney, for the appellee (the State).

GAGER, J. The accused, Segar, was tried and convicted in the Superior Court in Middlesex County, upon an information in ten counts charging him with uttering or publishing ten checks for differing amounts, to each of which the name of George T. Cavanagh was falsely signed. All of the checks were of the ordinary form of bank checks, and were drawn on the East Hampton Bank and Trust Company located in East Hampton, in Middlesex County, and the information alleged that such uttering or publishing was done at East Hampton, in Middlesex County, with the intent to defraud the Bank and Trust Company.

Section 6628 of the General Statutes provides in part that "every person charged with any offense shall be tried in the county wherein it shall have been committed, except when it is otherwise provided." There is no special provision relating to the offense of uttering or publishing forged instruments.

The first ground of appeal is that, upon the admitted facts, the Superior Court for Middlesex County had no jurisdiction over the offense charged, but that the Superior Court for Windham County alone had jurisdiction. The question is presented to us through the refusal of the court to charge as requested, and through the charge of the court as given. There was no dispute

upon the essential facts with reference to the uttering, which are clearly stated in the charge as given. There is no substantial difference between the charge requested, and the charge as given, as to the facts to be found. The court charged as follows, to wit: "There is, I understand, no controversy that the accused cashed the checks, Exhibits 1 to 10 inclusive, in Willimantic, and that they came, in due course, through other banks to the East Hampton Bank and Trust Company, in this county, and were there paid. If you find that it [the State] proved that the accused used these checks at Willimantic in exchange for cash or goods with the intent that they should, in due course, be presented to the East Hampton Bank and Trust Company for payment, and that they were so presented, such facts would constitute an uttering, by the accused, of such checks as true, within this county. The accused, as I recall, does not dispute these facts."

For certainty we state the request to charge, as follows: "If the jury find that the checks set forth in the information were offered by the accused in Windham County to any person and accepted by such person in payment for goods or money obtained from such person to whom the checks were so offered and by whom they were so accepted; and further find that the checks passed into the hands of such persons who accepted such checks and endorsed the same, and that such persons thereupon endorsed such checks and deposited them in a bank in Windham County to their own credit and that the accused no longer had any control over the further disposition of said checks, then the offense of uttering said checks was committed in Windham County by the accused and the Superior Court in and for Middlesex County has no jurisdiction over said offense, or in the subject matter thereof."

Was the use of these checks by the accused as stated, at Willimantic in Windham County, an uttering or publishing in Middlesex County, as the court informed the jury? The offense charged was not forgery, but uttering or publishing the forged instruments. The place of the forgery is for present purposes therefore immaterial; for the crime charged is solely the uttering or publishing of the forged check. To utter is to offer. Bishop on Statutory Crimes (3d Ed.) § 306, says that in forgery "it means to offer by some overt act; as, one who offers a forged instrument . . . intending it shall be received as good, utters it, whether accepted or not." To the same effect is the definition in Bouvier's Law Dictionary, in the Standard Dictionary, and in others. See also Clark's Criminal Law (3d Ed.) § 114. The facts in this case are so simple and conclusive that no refinements of definition or of analysis are required. From the finding it appears that on or about the dates mentioned in the information, the defendant offered the checks in the town and county of Windham to sundry persons in said town with whom he had been transacting business; that said checks were severally accepted by the persons to whom offered in the town of Windham, and the defendant received for each of said checks money or goods to the amount of the face thereof; that each of said checks was indorsed by the defendant, delivered to the person to whom indorsed in Windham, and deposited by the indorsee in his bank in Windham, and the persons receiving said checks received from said bank money or credit to the amount of the face of the check so indorsed; that said bank or banks in the regular course of the banking business thereupon forwarded said checks to their respective banking correspondents and in due course each of said checks reached said East Hampton Bank and Trust Company at East Hampton, in the

County of Middlesex, and each of said checks was there honored and paid by said East Hampton Bank and Trust Company, and the paying bank believed at the time that the maker's signature, "George T. Cavanagh," was the genuine handwriting of George T. Cavanagh. This is only a more extended statement, in the finding, of what the court condensed in its charge to the jury. It is too plain for discussion that this conduct was, within any accepted definition, an uttering or publishing, and even more, for it was a successful offer resulting in an actual delivery of the forged instruments to others for cash and goods, whereby the accused lost all power and control over the forged documents and sent them on their way for collection through other banks in the usual course of business. Indeed, it is not directly claimed by the State that the utterance and publication were not complete in Windham County, but it says any other rule than to lay the offense in Middlesex County, as done by the trial court, would invite failure in the criminal law. We do not see exactly how this would result. This very case could as easily have been tried in Windham County as in Middlesex. It is desirable that the jurisdiction of criminal offenses be made distinct and certain. For offenses against the United States this is provided for by the Sixth Amendment of the Constitution, which requires that the trial shall be "by an impartial jury of the State and district wherein the crime shall have been committed." Our provision is by the statute above quoted. In this case all the facts constituting the utterance clearly happened in Windham County.

The State supports its claim by reference to a class of cases in which the use of the mail, or an innocent messenger, is necessary to make an utterance. *In re Palliser*, 136 U. S. 257, 10 Sup. Ct. 1034, is one of these

cases. Palliser, in New York, addressed a letter to a postmaster in Connecticut, construed to be a bribe for the sale of postage stamps. It was held that whether an offense was committed in New York, where the letter was mailed, or not, an offense was committed in Connecticut, and that the District Court of Connecticut had jurisdiction. In *State* v. *Hudson,* 13 Mont. 112, 32 Pac. 413, 19 L. R. A. 775, also a mail case, the accused was tried and convicted in Gallatin County. The proof was that in Gallatin County the accused mailed a letter to the Singer Manufacturing Company in Silver Bow County containing a forged instrument by which it was intended to defraud the Singer Company, and this letter was received by the Singer Company at Butte, in Silver Bow County. The judgment was reversed because the instrument was uttered in Silver Bow County, where the letter was received. The opinion in the *Hudson* case was based upon the opinion of Judge Cowen in *People* v. *Rathbun,* a case very frequently cited, and found in 21 Wendell (N. Y.) 509. This again was a mail case, where, after an elaborate examination of the authorities, it was held that the venue was in the county where the letter containing the forged instrument was received, and not in the county where it was mailed. The cases of *Norris* v. *State,* 25 Ohio St. 217, and *State* v. *Lichliter,* 95 Mo. 402, 8 S. W. 720, are both mail transactions, and jurisdiction was held to be where the letters were received. These and other cases of similar import are all based upon the theory that to constitute an uttering or publishing there must be an offering or negotiation, that this requires two parties, a party acting and one acted upon, and that in the case of a mailing or an innocent agent there can be no such offer or negotiation until the forgery has reached the person proposed to be acted upon, and it is there and then only that the utter-

ing and publishing becomes a completed act, and that the offense is committed. See the rather elaborate discussion in *People* v. *Rathbun, supra,* and also, to the same effect, in *Lindsey* v. *State,* 38 Ohio St. 507. Conceding the correctness of the result reached in these cases, we cannot see what possible support they furnish to the claim that the venue here is where the bank, on which the checks were drawn, was located. It was not there, but in Windham County, that the checks were offered, accepted, parted with, paid for, and passed completely out of the control of the accused and into the possession and ownership of the indorsees, and the accused, having received the proceeds of the checks, had nothing more to do with them, nor any further interest in them, for we quite agree with counsel for the accused that the persons to whom the accused indorsed the checks in Windham County were in no proper sense the agents of the accused. He did not constitute them agents to cash the checks at the bank and deliver him the proceeds, but he sold the checks outright, and after that they were the property of the indorsees who held the checks as their own. We find no authority upon which we can in any plausible way support the claim that the uttering or publishing was in Middlesex County. On the other hand, it is too clear for serious question that the entire offense charged was committed in Windham County, and to charge otherwise was error. The theory of the mail cases is to establish the very place of the utterance, which here is most completely established as in Windham County. The utterance was complete on the making of the offer, quite irrespective of the acceptance or ultimate cashing of the checks.

The alleged forgery was that the accused had signed all of the checks described in the information in the name of George T. Cavanagh, and that this signature

was false, forged and counterfeit. The accused admitted that he had signed the name of Cavanagh to these checks, but his claim, and the real defense, was that this signature was made by the authority of Cavanagh. An account in the bank at East Hampton had been opened in Cavanagh's name. It was claimed by the accused that this account in Cavanagh's name consisted of funds furnished by the accused, and was used by the accused for his protection from attachment, and that his drawing on this account in Cavanagh's name was pursuant to a sort of standing arrangement between the two; and a considerable amount of testimony was introduced upon the question of this Cavanagh bank account and Segar's authority. Under this situation the State claimed that, at the time of Segar's arrest, Cavanagh, in the presence of Segar, Hurley, a State policeman, and others, stated that he did not give Segar any authority to sign his name, to which Segar said nothing except that he did not want to say anything until he had seen his counsel. On this occasion, when it appears that Cavanagh also was placed under arrest, Cavanagh signed a statement written by a State policeman, giving some account of his relations with Segar as to the account in the bank, and, among other things, in this statement, he said: "The checks shown to me today are not my checks. I did not write them. This is the first time I ever saw a cancelled check from the bank, although I heard a number of my checks had been in the bank. It looks to me now as if they had been using me for a damned fool. When Segar told me he had deposited money in my name, if I thought he was going to continue doing so, I would have stopped it. I never got a cent of the money that they got out of the bank. I never gave any one the right to use my name on checks and they had no right to draw them." The officer, apparently Hurley,

who testified as to the statement by Cavanagh in Segar's presence and about Cavanagh's statement in writing, on cross-examination by the accused, disclosed the existence of this written statement, and thereupon, on redirect, the State put it in evidence as Exhibit 114. It does not appear from the finding that Cavanagh's statement so written down by Hurley was made in the hearing of Segar, and we cannot infer by any construction of the finding that the statement as written purports at all to be the statement which Hurley testified to as made by Cavanagh in the presence of Segar, but rather as a statement made to Hurley for Cavanagh's own purposes, and not called to Segar's attention.

The accused made no objection or exception to the introduction of this statement, and did not move to strike it out. This exhibit, therefore, came before the jury without objection, limitation or criticism, and, consequently, for any and all purposes. This written statement was hearsay evidence and inadmissible if objected to on that ground; but having come in without objection, it was available for whatever it was worth upon its face. In this state of the evidence the accused requested the court to charge: "Exhibit 114, offered by the State, consisting of the signed statement of Cavanagh to the effect that he did not give Segar authority to sign his (Cavanagh's) name, cannot be considered by the jury in determining as to the facts whether he did or did not give Segar such authority."

The court did not so charge, and in this there was no error. The most that this request amounts to is in effect a motion to strike out. Both sides had rested and the case had been argued and it was too late for such a motion. Even if we construe it as the equivalent of such a motion, it was defective in that it gives no reasons, raises no ground of objection or discussion, and did not merit notice by the court.

Cavanagh was summoned by the State, and was present during the trial as a witness, but was not called to testify by either the State or the defendant. How this became known to the court or jury does not appear. Upon this fact the accused requested the court to charge that "the fact that Cavanagh was summoned as a witness for the State and was in attendance at the court during the entire trial by reason of being so summoned and to that extent under the control of the State, and the further fact that he was not called as a witness by the State, raises a presumption against the claim of the State that Cavanagh did not authorize Segar to sign his name to the checks."

The court was justified in refusing this request, and we adopt as applicable so much of the opinion in *Scovill* v. *Baldwin*, 27 Conn. 316, 318, as reads as follows: "The circumstance that a particular person, who is clearly within the control of both parties, is not called as a witness, is too often made the subject of comment before the jury. Such a fact lays no ground for any presumption against either party. If the witness could aid either party, such party would probably produce him. As he is not produced, the jury have no right to presume anything in respect to his knowledge of any facts in the case, because they are to try the case upon the facts shown in evidence, and upon them alone, without attempting to guess at what might be shown if particular persons were produced by the parties."

The most recent statement of the rule in our own court was in *Tetreault* v. *Connecticut Co.*, 81 Conn. 556 (71 Atl. 787) where, on page 558, it is said: "'It is a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted; and the holding back of evidence by him

is a presumption of fact against the party who withholds such evidence in a case where it could be produced.' *State* v. *Hogan*, 67 Conn. 581, 584, 35 Atl. 508; *Throckmorton* v. *Chapman*, 65 Conn. 441, 454, 32 Atl. 930." Upon this subject it was further stated: "Now of course, that depends upon the finding of the jury whether there was any holding back; and you must, in passing upon that, consider the argument upon the part of the defendant, that it was not within their province at this time to produce that witness."

Upon the facts it appears quite evident why neither side really wished to call Cavanagh. He might be hostile to the accused because he would not wish to become responsible for an overdrawn account. He might be hostile to the State as then under arrest, and the State might have been well content to have got in Cavanagh's statement. The present case is clearly covered by the rule in *Scovill* v. *Baldwin*, 27 Conn. 316, for the witness was in court during the whole trial and was as available as a witness to the defendant as to the State. In 1 Greenleaf on Evidence (16th Ed.) § 195b, to the well-recognized principle stated in the *Tetreault* case, *supra*, in the case of a witness not called, it is added: "He must not be one equally available for production by the opposite party (for since the opponent wishes to argue that the testimony would be unfavorable if produced, it is then a simple matter to put the witness on the stand; otherwise, the argument tells just as much against the opponent), and a witness in court is of course equally so available." See also 1 Wigmore on Evidence, § 288; *Harriman* v. *Reading & Lowell Street Ry. Co.*, 173 Mass. 28, 53 N. E. 156.

Whether anything occurred in the argument to call for any comment by the court in respect to the matter does not appear, but, so far as does appear from the record, in no way would the court have been justified

in charging as requested, for the charge requested is a straight-out direction to the jury that the failure to call the witness then present in court did raise a presumption, and that the presumption was against the claim of the State. The utmost that could have been claimed, though we do think even that was unnecessary, and perhaps would have been improper, was to call the attention of the jury to the fact and leave it to the jury to say whether or not any presumption should properly be drawn, and if so, what it was. There was no error in the refusal to charge as requested on this matter.

The writing, Exhibit 114, above referred to, signed by Cavanagh, was in evidence without objection, in which Cavanagh stated that he gave no authority to the accused to sign the checks in his name. This statement was no proper part of the cross-examination of the witness then upon the witness stand, because it did not appear that it was this statement that had been called to Segar's attention and as to which he said nothing except as above explained.

The accused, in defense, introduced a witness, Stimpson, and offered to prove by him that on one or more occasions after the arrest, Cavanagh had said to him that he had given Segar authority to sign his name to checks. The court excluded this testimony. The only justification of this ruling by the State in its brief, is based upon the *post litem motam* rule. The court excluded the offered evidence on the ground that Cavanagh had not testified in the case. The record is not altogether clear here, but we believe this to be the meaning of it. If the ruling can be justified on any ground it should not be disturbed. We do not understand that the *post litem motam* rule applies at all to contradictory statements made out of court and offered for the purpose simply of attacking the credit of the witness. The rule applies in those cases in which, by a modification of the hearsay

rule, certain kinds of hearsay may be introduced as evidential of the truth of the facts stated,—as in cases of pedigree, ancient rights, common fame, dying declarations, and some others. See 1 Greenleaf on Evidence (16th Ed.) §§ 114, 130 and 131; *Dawson* v. *Orange*, 78 Conn. 96, 124, 61 Atl. 101; Stephens' Digest of Evidence (Conn. Notes) §§ 30 and 31; 2 Wigmore on Evidence, § 1033, note 1. In this latter citation we think the opinion of JUDGE BALDWIN in *Hamilton* v. *Smith*, 74 Conn. 374, 50 Atl. 884, is misconstrued as applying to cross-examination for attacking credit by inconsistent statements, while a close examination will disclose that the *post litem motam* principle was properly applied, because the hearsay was offered as original evidential testimony in a matter of boundaries given after the controversy arose, and not merely as a contradictory statement to affect credit. We do not think this rule, cited by the State, applies to the present case.

Is the objection, apparently raised by the court, that Cavanagh had not testified, tenable in this case? We base our ruling on what we regard as clearly the fact, that the hearsay statement of Cavanagh was in fact in evidence in a shape to be regarded by the jury as evidential of the fact stated; that is, that he had never authorized the accused to use his name on the checks in question. The State had the benefit of this statement as much as though Cavanagh had said the same thing on the witness stand. That the statement might have been excluded on objection does not at all affect the fact that it was before the jury, effective for whatever the jury might deem it worth, and upon the vital point of whether Cavanagh authorized the accused to use his name or not. The situation is, in substance, and so far as the interests of the accused are concerned, like that where hearsay is admitted under some of the exceptions

to the rules, in which case the use of prior self-contradiction is allowed. See 2 Wig. on Evi. §§ 884–887.

The evidence of Cavanagh was improperly received, but at the instance of the State. Before objecting to rebutting evidence, which would have been admissible had the evidence been properly before the jury, or had Cavanagh in person testified, the State should have withdrawn the statement. It would manifestly be unjust to permit the State to have the benefit of the inadmissible, although relevant, statement, and at the same time deprive the accused of showing a contradictory statement to weaken or destroy its effect. The situation is unusual, but we think substantially the same question, though with the claims reversed, was rightly settled in *Barnes* v. *State,* 20 Conn. 254, 257, when the court said: "But when such evidence had been received, at the instance of the defendant, and was before the court, it was a very singular claim on his part, that it should not be rebutted by the State. He ought to have waived or withdrawn his own irrelevant evidence, before he objected to such rebutting proof. It would be passing strange, if the defendant could claim the benefit of the evidence which he had adduced, and, at the same time, exclude the evidence on the other side, to refute it, on the ground that his own evidence was irrelevant."

The present case is even stronger, for the evidence that had been introduced, while inadmissible on technical grounds, was not at all irrelevant to the question before the jury. Cavanagh's statement was relevant. Hearsay is not excluded because it is irrelevant in fact, but because of testimonial weakness due to lack of opportunity to test by cross-examination. 2 Wig. on Evi. § 1362, defines the hearsay rule as follows: "A rule rejecting assertions, offered testimonially, which have not been in some way subjected to the

test of cross-examination." Because the accused here, whatever may have been his reason, waived his right of objection to Cavanagh's statement, in itself relevant, we cannot see that this furnishes any reason why he should be deprived of the opportunity to show contradictory statements. The case of *Phelps* v. *Hunt*, 43 Conn. 194, does not apply, because there the matter received without objection appears from the opinion to have been irrelevant in substance, which is not the case here. It is true that the accused might have even then moved to strike out the statement, but the mischief had been done, and he was justified in insisting on his right to show a contradictory statement. We think upon the record as it stands there was error in excluding the question put to Stimpson as to the contradictory statement of Cavanagh.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.