ELLA S. DORIS, ADMINISTRATRIX, (ESTATE OF EMMA STOKES PILLING) *vs.* DAVID W. McFARLAND.

Third Judicial District, Bridgeport, April Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, DICKENSON AND JOHN RUFUS BOOTH, Js.

Argued April 22d—decided July 29th, 1931.

*Raymond E. Hackett,* with whom was *John D. Walker,* for the appellant (plaintiff).

*William H. Comley,* with whom, on the brief, was *Harry R. Sherwood,* for the appellee (defendant).

HAINES, J. This is a companion case to Doris, Administratrix, v. McFarland *et al., ante,* p. 594, 156 Atl. 52, the plaintiff and one of the defendants being the same in both. The cases were tried together. The identity of the parties and their relations to each other

will sufficiently appear from a reference to the opinion in the former case.

The plaintiff, being the surviving sister and administratrix of the estate of Mrs. Pilling, brought this action in two counts—the first alleging that $15,000 was due the estate on a note of the defendant, made to Mrs. Pilling in her lifetime, and the second and alternative count alleging the same indebtedness for money loaned to him by Mrs. Pilling.

Early in the trial it developed and was conceded by the parties, that there was no note in fact, though its existence had been admitted in the answer, and the trial resolved itself into an action on book account. A very large number of cash transactions had taken place between the parties, and counsel agreed to the submission of all the papers to an accountant, who made up an account between the parties, which was submitted to and accepted by the court after full hearing upon all objections thereto. This account showed the sum due to the estate to be $1150 with $486.83 interest, and judgment was rendered for the plaintiff for $1636.83.

The court, after a hearing on the report of the accountant, found that the total amount turned over to the defendant by the intestate was $72,472.02 between June 30th, 1916, and June 15th, 1918, and this total agrees with the draft-finding upon that feature of the case. There is also an accord in the finding that $39,000 of the total was a loan to the wife of the defendant, and was secured by a mortgage, which had been fully paid with interest. This left a balance of $33,472.02 to be accounted for. The various items allowed as credits to the defendant, do not seem to be disputed save in four particulars, and the assignments of error now insisted upon are all designed to test the propriety of these four credits. The above stated bal-

ance included (1) an item of $3000 which defendant claimed was a gift to him for the purchase of a car; (2) taxes on Mrs. Pilling's house erected on land leased from Mrs. McFarland, covering the period from its erection to her death, amounting to $2066.36, and this sum was paid by the defendant, as he claimed, under an agreement with Mrs. Pilling that he should do so and charge it to her account; (3) insurance premiums on the house, also claimed by the defendant to have been paid by him on an understanding with Mrs. Pilling, amounting to $232.70, and (4) check of $500 to the order of Veronica Blythe (who, the finding states, was the nurse in charge during Mrs. Pilling's last illness), claimed by the defendant to have been sent by him at the request of Mrs. Pilling. These items total $5798.36 and are now, as stated, the sole points of attack in this appeal. There were numerous requests for changes in the finding, but many of these are determined by the opinion in the companion case referred to above; in so far as other requests for changes are important, we shall deal with them in considering the four items now in question. The entire evidence in both cases was certified as appears of record in the companion case, and for the purpose of the consideration of requested changes in the finding, we thus have recourse to all the evidence.

As to the item of $3000, the court found as follows: "Of the balance of said total, $3000 was represented by a check for $3000 paid to Dr. McFarland by Mrs. Pilling for the . . . purchasing of an automobile intended by Mrs. Pilling and received by Dr. McFarland as a gift," and to this the plaintiff excepts on the ground stated in the brief that it is found without "substantial testimony" or "convincing proof" to justify it. This is an insufficient basis for an exception. Rules of Appellate Procedure, § 7 (a). We discuss

this finding because of its importance, but the fact that we do so is not to be considered as relaxing our rule.

The relevant evidence discloses that the accountant, O'Connor, was put in possession of the books and papers of both the intestate and the defendant, and he made an audit and search of the records covering the financial transactions between them, embodying the result in a report (Exhibit 18), which contained five schedules and classifications of items. Schedule 4, entitled "Miscellaneous Items," shows a check written and signed by the intestate, for $3000, dated June 30th, 1916, payable to the defendant, to which the accountant appended an explanatory note, "This item was for the purchase of an automobile as a gift to Dr. McFarland from Mrs. Pilling." This Exhibit 18 was admitted in evidence, counsel for the plaintiff saying, "I object of course to his conclusion" (which was that the defendant owed the estate a balance of $1150), "I have no objection to its going in as showing the result of his examination of Dr. McFarland's accounts."

Upon the examination and cross-examination of O'Connor, it developed that this was the first item he took account of in beginning his examination. On cross-examination he was asked the source of his information as to the purchase of the automobile as a gift to Dr. McFarland and replied: "Mrs. Jones." She is a daughter of the defendant. It further developed that the check appeared on the list of moneys turned over to Dr. McFarland, on the books of the intestate, but there was no corresponding credit on the account books of the defendant as in the case of other payments by the intestate to him. It also appeared that the check was in the handwriting of the intestate while the stub was in the handwriting of the

defendant, who had stated that she was at this time in the habit of coming to him with her check book to have him make out the stubs and write up the book for her. The check and stub were both shown to the witness, and he was examined thereon. The stub only showed that the check (Exhibit O) was for "Car."

In view of the attack now made on this item, it is regrettable that it did not receive further attention during the production of the evidence. The record shows only very meager testimony of a specific and direct character. Though the report on the item made by the accountant, was stated by him to be based upon information received from Mrs. Jones, he was not asked what that information was, or in what form, whether an oral statement only or a writing, or otherwise. No effort was made by counsel on either side to pursue the matter further. No attempt was made to strike out the evidence as hearsay, but it was allowed to come in and it remained as part of the evidence for the consideration of the court, for what it might be worth. It does find confirmatory support of a sort in the fact that the amount does not appear as a credit on the books of the defendant, to be accounted for, and the presence of the word "Car" on the stub of the check.

A very similar situation arose in the case of *Poliner v. Fazzino*, 105 Conn. 350, 353, 135 Atl. 289, where we said: "The appellant now claims, apparently for the first time, that this evidence was based on information given the witness by his father, now deceased, and therefore hearsay. If this be so, of course it might have been eliminated by proper motion, seasonably made, but since it was admitted and suffered to stand without objection, it became and remains 'evidence in the case, subject, of course, to any infirmative suggestions due to its inherent weakness.'" 4 Chamberlayne on

Evidence, § 2701; *State* v. *Segar*, 96 Conn. 428, 437, 114 Atl. 389; *Damon* v. *Carroll*, 163 Mass. 404, 40 N. E. 185.

Though the evidence is thus extremely limited, it all points in one direction confirmative of the accountant's report, and there is no evidence in contradiction, direct or indirect. We cannot say that with the reasonable inferences which the trial court was permitted to draw, it did not remove the question from the realm of conjecture and furnish a sufficiently strong probability of truth to induce belief in an impartial mind, even though not entirely free perhaps, from all reasonable doubt. Paragraph twenty-nine of the finding to which exception is taken, must therefore stand. *Hoyt* v. *Danbury*, 69 Conn. 341, 348, 37 Atl. 1051.

As to taxes; the appellant requested an addition to the finding to the effect that the above sum included various amounts of taxes on other property of the intestate, including her automobile; that the assessment of the tax upon the real estate was made direct to Mrs. McFarland, including the tax on account of the house, and that no tax was levied against the intestate for the house, but a proportionate amount of the entire bill was charged against the intestate by the defendant. Here again, the evidence adduced at the trial regarding this item is extremely sketchy and meager, but it is sufficient to justify the making of the above recited addition to the finding.

The court found that the land upon which the house was built was part of an extensive tract owned by Mrs. McFarland, and that during the six years, 1917 to 1923, "taxes assessed upon the property of Mrs. Pilling and Mrs. McFarland as aforesaid, were, by agreement of the parties, apportioned and the portion of Mrs. Pilling was paid by Dr. McFarland at her request and charged to her account. The amount so

paid for taxes was $2066.36." Exception is taken to that portion of this finding which states that the matter was by agreement of the parties and at the request of Mrs. Pilling.

With regard to the insurance, the court found that the defendant paid $232.70 for insurance upon the house built by the intestate, which, "by the agreement of the parties, was applied on account of said indebtedness." As to both these findings the plaintiff says "there is nothing in the evidence" to support the conclusion that there was payment by agreement.

Counsel apparently overlook the fact that the defendant himself testified that there was an understanding between the intestate and himself that she was to pay the tax on the house she had built; that there was a blanket tax to Mrs. McFarland and the amounts were arranged proportionately, that house being included. The court was entitled to believe this.

As to the insurance, it appears from the testimony of the insurance agent who wrote the insurance on the house built by the intestate, that the policy was made and remained at all times to her death, in the name of the intestate. The amount of the premium was slightly in excess of the amount which the defendant's books show that he paid for her. The appearance of this payment on his books, made at the time, together with the existence of the policy in the name of the intestate and the testimony of the defendant, and the relations of the parties at this time, and the whole situation portrayed in the evidence, and reasonable inferences which the court was privileged to draw under the circumstances, are such, that we cannot hold the finding to be lacking in evidential support. Both findings must stand as made.

The fourth and last exception is to the allowance of a credit of $500, being a check drawn by the de-

fendant to the order of Veronica Blythe. The finding is that "on September 27, 1923, Mrs. Pilling was seriously ill and was in the care of Veronica Blythe in New York City. On that date the defendant sent to Mrs. Pilling $500 on account of the indebtedness, which check by direction of Mrs. Pilling and for the convenience of the parties under the conditions then existing, was made payable to Veronica Blythe." A thorough examination of all the evidence in the case, discloses nothing whatever regarding this item beyond the fact that this check was so made out the day before the intestate died in New York and was indorsed with the name of Veronica Blythe. No testimony whatever was offered as to the circumstances leading to the making of this check, whether the intestate asked for it or whether she in fact ever received it, or that Veronica Blythe was in fact the nurse in charge of the intestate at the time. If such be the facts, the evidence is not before us. Admitted for a limited purpose only, the account furnishes no evidential support for this item. In this state of the record, the only course open to us is to strike out the indicated portion of the finding, and this leaves no legal warrant for charging the amount to the account of the intestate. It follows that the judgment of $1636.83 must be increased by $500 with interest thereon from the date of the check, September 27th, 1923, to the date of the judgment, June 18th, 1930, being $201.75, a total of $701.25.

There is error in part and the cause is remanded to the Superior Court with direction to enter judgment for the plaintiff as of June 18th, 1930, for $2338.08 and costs.

In this opinion the other judges concurred.