HELEN T. KEELER *vs.* SEARS, ROEBUCK COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 6th, 1935—decided January 8th, 1936.

*Harry B. Dinerstein,* with whom, on the brief, were *Joseph G. Shapiro, Harry Allison Goldstein* and *Charles S. Brody,* for the appellant (defendant).

*Leonard McMahon,* for the appellee (plaintiff).

AVERY, J.  The claimant, Helen T. Keeler, is the widow of Edward B. Keeler, deceased, of Danbury, a former employee of the respondent, the Sears, Roebuck Company.  He was killed on a railroad crossing at Pawling, New York, while driving his automobile from New York State to Danbury.  The accident occurred on December 4th, 1933, at about 6.50 p. m.  His widow made a claim for compensation which was heard by the commissioner for the fourth district who found that the decedent received the injury resulting in his death arising out of and in the course of his employment; and that the claimant, being his sole dependent within the meaning of the compensation act, was entitled to compensation and filed an award accordingly.  An appeal was taken to the Superior Court, where the award of the compensation commissioner was affirmed and the appeal dismissed; and the respondent has appealed to this court.  The reason assigned for appeal is the refusal of the court to correct the finding of the commissioner by striking out certain facts found and adding certain other facts which the appellant claims were established by the evidence, indicating that the deceased was not engaged in the business of his employer at the time of his death.

The commissioner found the facts as follows: The

decedent was in the employ of the respondent as an outside repairman, and his business was to repair and service radios, oil burners, washing machines, refrigerators, etc., installed in private homes within the sales territory of the Danbury store of the respondent. This territory included towns in Connecticut and eastern New York State in the vicinity of Danbury. In the course of his duty, he reported to that store each day at about 8.30 in the morning, at which time he was given a group of "service order and report" blanks, each service order being an individual request for service by a customer. He would then leave the store and complete as many of the orders as possible before returning in the evening. The repair or service calls made by him were not always made because of the written service order, but sometimes were a follow-up on work previously done without any written order from the company. On December 4th, 1933, the decedent reported as usual at the store at about 8.30 in the morning and was given twelve service order blanks to be completed as nearly as possible that day. He serviced a radio in Redding, returned to his home at about 10.30 for a necessary tool, left there to make a call in Bethel, returned home to lunch at noon, and left again about 12.45 to go to his New York State territory. At about 6.50 p. m. he was killed at a railroad crossing at Pawling, New York, while returning to Danbury.

His employment necessitated traveling by automobile to the place where the service was to be rendered. He used his own car and received five cents a mile from the company for its use. At that time, the company was operating under the N.R.A. code, and the decedent worked fifty hours a week. Any extra time on one day would be taken care of by working less on another day in the same week. It was his custom to work

New York territory on Mondays. On the day of the accident, he had left Danbury about noon to go to New York State in his usual way and was returning to Danbury by the direct route through Pawling when killed that evening. One of the service slips given to him in the morning was for a call at the Palace Theater in Danbury to be made between 7 and 8 o'clock that evening, which call he intended to make upon his return. His hours of employment started when he reached the store in the morning. On the afternoon of the accident, he was driving the car which he usually used in his work, was in the territory where his employment would reasonably have required him to be, and was within the period of his employment. These facts were supported by testimony or by reasonable inferences from facts in evidence.

The claim of the respondent in substance is that it was not shown precisely where the deceased had been immediately preceding the accident; and that, under the evidence, it was uncertain whether the decedent was, at the time he was killed, in the business of the company or upon business of his own. In the last analysis, this was a disputed question of fact upon which the decision of the commissioner was final. *Stier* v. *Derby,* 119 Conn. 44, 51, 174 Atl. 332. The accident occurred within the period of employment at a place where the decedent might reasonably have been. "There is a natural presumption that one charged with the performance of a duty, and found injured at the place where the duty may have required him to be, is injured in the course of and as a consequence of the employment." *Saunders* v. *New England Collapsible Tube Co.,* 95 Conn. 40, 43, 110 Atl. 538; *Judd* v. *Metropolitan Life Ins. Co.,* 111 Conn. 532, 536, 150 Atl. 514. In this connection the appellant urges that the finding ought to be corrected so as to insert the statement

that on the afternoon the deceased was killed he went to Brewster to do work which was not for the defendant but on his own account. This contention is based upon the testimony of Mrs. Keeler, the claimant, who stated that she had learned since the accident that her husband went to Brewster that afternoon for a call not for the Sears, Roebuck Company. Her testimony upon this point was clearly hearsay, which was not corroborated. Hearsay testimony admitted without objection is "available for whatever it was worth upon its face." *State* v. *Segar,* 96 Conn. 428, 437, 114 Atl. 389; *Doris* v. *McFarland,* 113 Conn. 610, 614, 156 Atl. 58. Clearly this testimony was not conclusive upon the commissioner. It was within his province to determine to what extent he would give it credence. It follows that no correction of the finding can be made whereby the position of the respondent will be materially advantaged.

There is no error.

In this opinion the other judges concurred.