EDWARD G. PRESTA *v.* WILLIAM N. MONNIER ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 10—decided November 20, 1958

*Edward Olson, Jr.,* for the appellants (defendants).

*Victor F. DeNezzo,* for the appellee (plaintiff).

KING, J. The plaintiff sued to recover a deposit made on the purchase price of an apartment house owned by the defendants. In a counterclaim, the defendants sought damages and equitable relief for the plaintiff's failure to carry out the agreement of purchase. Judgment was rendered for the plaintiff against the named defendant on the complaint and against both defendants on the counterclaim. Since the judgment on the complaint is dispositive of that on the counterclaim, we discuss only the former.

The apartment house had been devised, subject to a life estate in their stepmother, to the defendants, William N. and Dwight C. Monnier, by their father, who died in 1934. At their stepmother's death in 1953, the defendants became the sole owners. During the last few years of her life, the stepmother had employed, as housekeeper of the property, Mrs. Irene Mercier, who in that capacity had collected the rents, deposited the money in the bank, and kept a list of what was rented and the amounts received. After the property came into the hands of the defendants, William N. Monnier, hereinafter referred to as the defendant, assumed its management, since his brother lived in Buffalo. The defendant himself was engaged in business in Flushing, Long Island, and was at his home in Connecticut only on week ends. Therefore Mrs. Mercier was retained by him to perform the same duties as she had for the stepmother. Besides collecting and depositing the rents, Mrs. Mercier saw to it that the property was not damaged by tenants and took care of the renting to

new tenants. The defendant and his wife periodically entered in their checkbook the amounts deposited by Mrs. Mercier, and the defendant reviewed the record of individual rents kept by Mrs. Mercier and knew the rent on each apartment and the name of the tenant.

As a result of a conversation between Mrs. Mercier and the plaintiff's wife, the plaintiff became interested in purchasing the property and had an interview with the defendant in the presence of Mrs. Mercier. In response to a request by the plaintiff for information about the rents from the apartments, the defendant referred him to Mrs. Mercier, saying that she had handled the property and the rents for quite a while and knew more about it than he did. In the defendant's presence, she then told the plaintiff that the rents charged had been permitted and approved by the office of rent control; that the rents for the sixteen apartments amounted to $150 per week; that eleven garages rented for $5 a month and a twelfth for $7; and that about twenty-five cars were parked, so that the total income from the garages and parking was $122 a month. At the same time, the plaintiff was given a list of the yearly expenses such as taxes, water, insurance, fuel oil, electricity and gas; these came to $3220. The plaintiff, in the presence of the defendant, asked for the rent control registrations for the individual apartments, and Mrs. Mercier stated she could not find them right away, did not know where they were, and would have to look for them. The defendant also told the plaintiff, in response to his request for an inventory of certain furniture which was to be included in the sale, that it could be taken the following day with Mrs. Mercier, because she knew what went with the house and what belonged

there better than the defendant did. Thereupon the parties executed a contract of sale, and the plaintiff paid a $500 deposit to the defendant.

On the following day, the plaintiff and Mrs. Mercier joined in a tour of the apartments, and she prepared a writing which gave an inventory of the furniture in, and the rent of, each apartment. These rents amounted to $150 a week. When his attorney checked the records, the plaintiff discovered that the total of the rents approved by the office of rent control was only $115 a week, or $35 less than represented, and that but thirteen of the sixteen apartments rented were registered at the office of rent control. Upon this discovery, the plaintiff telephoned the defendant in Flushing and declined to go through with the purchase. The defendant refused to return the plaintiff's deposit.

The court found that the plaintiff believed and relied upon the representations made by Mrs. Mercier in the defendant's presence that sixteen apartments were rented, the rents charged were registered with, and legally approved by, the office of rent control, and $150 a week was legally collected from the apartments and $122 a month from garages and parking. The court further found that these statements were in part untrue and known by Mrs. Mercier and the defendant to be untrue; that they were made recklessly or without belief in their truth and for the purpose of having the plaintiff act upon them; and that the plaintiff was induced to, and did agree to, purchase the property in reliance on them.

These findings of ultimate facts include all the elements of actionable misrepresentation and fully support the judgment for recovery of the deposit. *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525; *Ceferatti* v. *Boisvert,* 137 Conn. 280, 282, 77 A.2d 82.

Unless they can be overthrown, the judgment must stand. The defendant has indulged in a wholesale attack on the finding in an endeavor to extricate himself. He has failed to point out in his brief anything entitling him to any of the additions to the finding which he seeks. *Brown* v. *Connecticut Light & Power Co.*, 145 Conn. 290, 293, 141 A.2d 634. The other attacks on the finding, so far as material, will be mentioned hereafter.

The defendant questions the scope of the general agency of Mrs. Mercier in connection with the operation of the apartment house. Her general agency is immaterial. The defendant saw fit to refer the plaintiff to Mrs. Mercier for answers to questions as to certain material facts. In so doing, the defendant made Mrs. Mercier his agent for this specific purpose. Mrs. Mercier's answers thus were in law the answers of the defendant, regardless of the scope or existence of any other agency relationship between them. *Davis-Scofield Co.* v. *Reliance Ins. Co.*, 109 Conn. 686, 690, 145 A. 42; see cases such as *Ezzo* v. *Geremiah*, 107 Conn. 670, 680, 142 A. 461. Independently of this, since Mrs. Mercier's answers were made in the presence and hearing of the defendant and at his instigation, and he in nowise repudiated them or signified to the plaintiff that they were unauthorized, there was ample support, under the rule of apparent authority, for the court's finding of agency. *Washington Cedar & Fir Products Co.* v. *Elliott*, 91 Conn. 350, 353, 100 A. 29; *Fireman's Fund Indemmity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 496, 18 A.2d 347.

Because the contract was signed the day before the inventory of furniture and the list of rents were given to the plaintiff by Mrs. Mercier, the defendant contends that the plaintiff, in executing the con-

tract, could not have relied on the information about rents contained in them. The plaintiff did not claim to have relied on it. His claim was based on the misrepresentations as to the total amount of rent legally being received from the apartment house. These were made prior to the execution of the contract of purchase. Even if the total amount of rent actually being collected was $150 a week, as represented, only $115 was legally collectible. This case is not one involving only innocent nondisclosure, as was *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82.

The defendant seems to claim that a party to a contract may, without liability, make such misrepresentations of fact as he chooses, provided the contract is afterwards reduced to writing and the misrepresentations are not included therein. This indicates a misconception of the parol evidence rule. The plaintiff is not seeking to add to, subtract from, or alter, the terms of the written contract itself. *Cohn* v. *Dunn,* 111 Conn. 342, 345, 149 A. 851; *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A.2d 605. He is claiming that he was induced to enter into the contract by misrepresentations of material facts. This action is concerned solely with material misrepresentation in the inducement of the contract. Parol evidence is ordinarily admissible to prove such misrepresentation. *McLaughlin* v. *Thomas,* 86 Conn. 252, 256, 85 A. 370; *Kiss* v. *Kahm,* 132 Conn. 593, 595, 46 A.2d 337. It was admissible here.

The defendant claims, in effect, that since the plaintiff himself might have checked the records of the office of rent control before he executed the contract but failed to do so, the defendant was privileged to misrepresent the legal status of the rents without incurring any liability. This is not the law.

*O'Neill* v. *Conway,* 88 Conn. 651, 654, 92 A. 425; *Ford* v. *H. W. Dubiskie & Co.,* 105 Conn. 572, 577, 136 A. 560; *Clark* v. *Haggard,* 141 Conn. 668, 673, 109 A.2d 358.

There would be liability on the part of the defendant even without the finding that he and Mrs. Mercier each knew that the representations were false. It is enough that the representations concerned material matters susceptible of exact knowledge and that the defendant, through his agent, chose to make them. *O'Neill* v. *Conway,* supra; *Clark* v. *Haggard,* supra, 672, and cases cited. Of course, apart from the defendant's own personal knowledge, the knowledge or lack of knowledge of Mrs. Mercier of the true facts in connection with her representations as agent was, in law, his knowledge or lack of knowledge. There is no suggestion that Mrs. Mercier was acting adversely to his interests; *Mutual Assurance Co.* v. *Norwich Savings Society,* 128 Conn. 510, 513, 24 A.2d 477; or that there are any other facts which would remove this case from the general rule that a principal cannot hide behind his agent's failure to communicate the true facts to him. *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 A. 603; *First National Bank & Trust Co.* v. *Manning,* 116 Conn. 335, 339, 164 A. 881; *Reardon* v. *Mutual Life Ins. Co.,* 138 Conn. 510, 516, 86 A.2d 570; *L. C. Bates Co.* v. *Austin, Nichols & Co.,* 143 Conn. 392, 394, 122 A.2d 795.

The defendant attacks the court's findings that three of the sixteen apartments were not registered with the office of rent control and that the legal rents totaled only $115 a week. The examination and cross-examination of the custodian of the rent control records in the state library, as disclosed in the defendant's appendix, is somewhat confusing. It

does appear, however, that rent control records covering this apartment house were admitted in evidence and that the custodian testified that they were, to the best of his knowledge, complete and disclosed registrations for only thirteen of the sixteen apartments. To none of this was any objection made. *Hartlin* v. *Cody*, 144 Conn. 499, 504, 134 A.2d 245. Under these circumstances, the findings complained of cannot be eliminated as unsupported by the evidence, even if the testimony of the custodian were treated as hearsay. *State* v. *Segar*, 96 Conn. 428, 437, 114 A. 389; *Doris* v. *McFarland*, 113 Conn. 610, 614, 156 A. 58; *Keeler* v. *Sears, Roebuck Co.*, 121 Conn. 56, 60, 183 A. 20; *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132. This is true whether these records in fact came from the defendant's original attorney, who died prior to the trial, or were produced by the custodian under subpoena, a matter which is not entirely clear from the appendix of either party.

The plaintiff testified that he believed and relied upon the representations of fact made by Mrs. Mercier in the presence of the defendant. This, of course, fully supported the court's finding to that effect.

Complaint is made of one ruling on evidence. The defendant objected to testimony by the plaintiff's wife as to conversations between Mrs. Mercier and herself, on the ground that "the declarations of an agent to prove agency are inadmissible." The court thereupon instructed the plaintiff to establish agency before calling for statements of the agent. The plaintiff then claimed that he was "trying to . . . lead up to the actual circumstances of the case here." The court overruled the objection and the defendant took an exception. The finding discloses that evi-

dence was thereupon admitted and considered, not for the purpose of showing agency but simply to show how the contract between the parties came about. While the finding lacks the clarity which is to be desired, the net effect seems to have been that in an informal fashion the defendant's objection was sustained and the evidence was excluded so far as it was offered to prove agency, although it was admitted for another purpose, not covered in the objection. In this there was no error, since no objection had been made to the latter ruling, and an appellant "is confined in this court to the ground of objection put forward . . . in the trial court." *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622.

There is no error.

In this opinion the other judges concurred.