EDWIN J. FORD ET AL. *vs.* THE H. W. DUBISKIE AND COMPANY, INC.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, JS.

In an action to recover damages for false representations by which the defendant's agent induced the plaintiffs to purchase stock, the trial court instructed the jury that since the law did not permit fraud to be contracted against and since the action was in tort and not upon the contract, a clause in the written agreement to the effect that no representations not contained in the printed literature furnished by the defendant should be binding upon it, did not preclude an action for a fraud which led to its inception, although it might be a fair question whether, if the plaintiffs saw or should have seen the warning, it would not naturally and in the exercise of reasonable prudence, have excited a certain suspicion in their minds. *Held* that the defendant could not complain of the charge in this respect.

While the ancient rule in this State, that a person is under no

Ford *v.* Dubiskie & Co., Inc.

duty to exercise reasonable care to protect himself against fraud or deceit, may be questioned to some extent in other jurisdictions, it is at least everywhere recognized that, before such a standard of conduct may be exacted of him, he must stand on an equal footing and have equal means of knowledge with the one who practices the wrong upon him.

The measure of damages in an action for fraudulent representations in the sale of goods is the difference between their actual value at the time of the sale and what they would have been worth had they been as represented.

Evidence of the "market value" of property, though not necessarily conclusive, is relevant and admissible to prove its "actual value," and, with respect to certain classes of property, such as stock in a corporation so situated that proof of its actual material and financial condition would be virtually unobtainable, it may be sufficient.

A witness who is experienced in buying, selling, analyzing and valuing corporate securities, may give his opinion as to the value of an unlisted stock without an active market, based upon quotations of "bids" and "offers" appearing in standard publications, upon financial statements furnished by the company itself, upon its dividend record, upon the fact that a receiver was appointed within a certain time after the date of the sale in question, and upon his general knowledge and information concerning business and financial conditions then existing.

The failure of a party to offer evidence peculiarly within his power to produce, furnishes a fair inference that it is unfavorable to him.

The price paid by a plaintiff for goods sold to him under false representations may fairly be taken as the value which they would have had if they had been as represented.

The general rule that it is within the reasonable discretion of the trial court to require or to refuse to require the jury to answer pertinent interrogatories, is subject to the exception that where the complaint contains two or more counts, or when two or more causes of action are presented in one count, the defendant has the right to save himself from the effect of the rule that a general verdict upon several causes of action imports a finding of all the issues for the plaintiff, by framing special interrogatories, reasonably few in number, each of which should be in such, form as to present one complete cause of action, so that, when answered by the jury, that particular cause of action will be settled; and when such interrogatories are presented to the trial judge, it is his duty to submit them to the jury; but if the interrogatories, as in the present case, are in such form that answers thereto would not settle the several

2000

causes of action, it is within his discretion to submit or refuse to submit them to the jury.

Argued November 5th, 1926—decided March 2d, 1927.

ACTION to recover damages for alleged fraudulent representations, brought to the Superior Court in New Haven County and tried to the jury before *Ells, J.;* verdict and judgment for the plaintiff for $1,421, and appeal by the defendant. *No error.*

*Samuel H. Platcow,* with whom, on the brief, was *David M. Reilly,* for the appellant (defendant).

*Joseph Koletsky,* for the appellees (plaintiffs).

HAINES, J. The complaint originally contained two counts for the rescission of contracts for the sale of stock in two corporations. These counts were stricken out, and the case went to the jury upon the remaining five counts, for damages for fraud and deceit in the sale to the plaintiffs of stock in three corporations.

The plaintiffs claimed to have proved that, at the dates of the sales of the stock as alleged in the complaint, the defendant was incorporated in the State of Delaware, and had liabilities in Connecticut; that it had complied with the statutory requirements for doing business in this State, and that it was engaged in the business of selling shares of stock, with offices in New Haven; that it was acting through duly authorized agents in the sale, among others, of the shares of the three companies referred to; that these agents represented to the plaintiffs that these shares were equivalent to cash, were absolutely safe, strong and profitable investments, and had been thoroughly and conscientiously investigated by experts and found to be as safe to purchase as United States government certificates and Liberty bonds, and even safer and better

to buy than Liberty bonds; that they were then yielding large dividends, and that the respective companies were then in a sound, healthy and prosperous condition, earning enormous profits, incapable of failure, and had received the endorsement, approval and sanction of eighteen States in the Union, and were protected and recommended by all the "Blue Sky Law" States; that they would be accepted by any bank at any time as collateral; would be cashed by the defendant and the plaintiffs' money returned whenever demanded; would yield dividends of forty per cent per annum, and would pay the plaintiffs very handsome returns in the immediate future and make them financially independent, and would make them partners in the defendant company; that these representations were, and were known by the defendant's agents to be, false and fraudulent, and made to deceive and to induce the plaintiffs to purchase the shares in question, and that plaintiffs were in fact so deceived and induced to make the respective purchases.

The case was tried to the jury and verdict was given for the plaintiffs on each of the five counts, aggregating $1,421.50; and a motion to set aside the verdict being denied, judgment was entered accordingly.

The appellant argues that the court was in error in refusing to charge as to the duty of the plaintiffs in view of the limitations placed upon the agents of defendant who were claimed to have made the representations complained of. The printed contracts signed by the plaintiffs for the purchase of these stocks contained a clause to the effect that no representations by the agent were binding upon the defendant principal except those made in the printed literature furnished by the principal. The court was requested to instruct the jury that this clause limiting the authority of the agents was a legal notice to the plaintiffs suffi-

cient to put them upon inquiry; that reasonable care required that they read these printed restrictions appearing in their contracts, and if statements were made by the agents beyond these limitations they were not justified in relying upon them. But the plaintiffs had offered evidence by which the jury could reasonably have found that these restrictions were unknown to the plaintiffs, having been intentionally concealed from them by the defendant's agents. Under these circumstances the court properly said to the jury that this was an action for fraud and deceit and not an action on contract, and that not only did the law not permit a fraud to be contracted against, but that this restrictive clause did "not operate to preclude a fraud which may have led to its inception." The court added: "But it may be a fair question for you to ask yourselves whether the plaintiffs saw it or under all the circumstances should have seen it, and if so whether or not it would naturally excite a certain suspicion in the mind of a reasonably prudent person."

We had a similar question before us in *Callahan* v. *Jursek,* 100 Conn. 490, 124 Atl. 31, and there gave our approval to a charge that "the obvious intent of that article was to preserve the contract, no matter what misrepresentations might have been made. . . . The plaintiffs are seeking to get their money back by saying that they were induced to part with it by fraud and misrepresentations. The contract was the thing they gave their money for, but they were not suing under the contract; consequently the paragraph in this contract does not cover this subject." And we added: "The construction the defendant contends for would be against public policy. Fraud cannot be contracted against. The authorities cited by the defendant are not in point, being cases of agency." P. 496. To the same effect see *Bridger* v. *Goldsmith,* 143 N. Y. 424,

428, 38 N. E. 458.  The present defendant cannot com-
plain of the treatment of this phase of the case by the
trial court.

As to the legal obligations of the plaintiffs, the jury
were told that it was the plaintiffs' duty to show that
they acted "as reasonable, prudent, and intelligent men
would act under like circumstances," and thus show a
justification for their reliance upon the statements of
the agents; and further, that it was the general rule
that the plaintiffs were justified in that reliance in
the absence of any knowledge of their own or of any
facts which should have aroused their suspicion or cast
doubt upon the truth of these statements; that where
the facts lie within the knowledge of the author of the
statements alone, the law does not require a plaintiff
to be "unduly incredulous and skeptical, resort to ex-
treme of precaution or exhaust all possible sources or
means of investigation before he believes."

Whether this statement of the law was applicable
to an action brought for a rescission of the contract
we need not inquire, but in an action for deceit, which
is the one before us, it was too favorable to the de-
fendant.  Though the court pointed out the distinction
in other parts of the charge, it was apparently lost
sight of here to some extent.  The defendant, in brief
and argument, seems likewise to have overlooked the
distinction.  Defendant's claims and the authorities
cited are for the most part those relating to agency and
rescission of contract.

The rule in actions for fraud and deceit was stated
by Judge Swift in the early case of *Sherwood* v.
*Salmon,* 5 Day, 439, 448: "I apprehend no authority
can be found to warrant the doctrine, that a man must
use diligence to prevent being defrauded, otherwise he
shall be entitled to no remedy.  The truth is, redress
is most commonly wanted for injuries arising from

frauds, which might have been prevented by due diligence. . . . In such impositions and deceits where common prudence may guard persons against the suffering from them, the offense is not indictable, but the party is left to his civil remedy for redress of the injury that has been done him." We cited this with approval in *Gallon* v. *Burns*, 92 Conn. 39, 42, 101 Atl. 504, and added: "It is possible that that statement of the law might not be regarded as correct in other jurisdictions, and it has sometimes been said that where a party deceived can protect himself by ordinary care, it is his duty to do so; but it is with this qualification, that he must have equal means of knowledge and be equally able to judge of the matter for himself, and to stand upon an equal footing with the one using deceit or making the representations; then if he acts without exercising the means of knowledge open to him, he does so at his own peril." The defendant has no proper cause for complaint on this phase of the case. That portion of the charge which pointed out the distinction between statements of mere matters of opinion, statements of matters of fact peculiarly within the knowledge of the agents, statements made recklessly and those which were manifestly absurd or untrue, was, we think, unexceptionable, certainly in their bearing upon an action for fraud and deceit.

One of the most serious questions raised by this appeal relates to the proof of damages. The jury were instructed that the rule of damages in this State was "the difference between the value of the property at the time of the sale and what it would have been worth if it had been as represented." *Dombroski* v. *Active Automobile Exchange, Inc.*, 103 Conn. 759, 760, 131 Atl. 404; *Commonwealth Fuel Co.* v. *McNiel*, 103 Conn. 390, 410, 130 Atl. 794; *Dwyer* v. *Redmond*, 100 Conn. 393, 406, 124 Atl. 7; *Gustafson* v. *Rustemeyer*,

70 Conn. 125, 137, 39 Atl. 104; *Murray* v. *Jennings,* 42 Conn. 9.

The appellant recognizes the soundness of the rule, but questions the evidence given to the jury upon which to apply it. The finding shows that the actual value of these stocks at the time of the sales was found by the jury from evidence of their market value which was determined from the state of the market reports of advertised "bids" and "offers" by brokers outside the State of Connecticut, which bids and offers were compiled and printed in various standard financial publications; also from financial statements (printed exhibits) furnished by the companies, from dividends and continuances thereof, and the proximity of the time of receiverships to date of purchase.

The testimony of the three brokers was admitted over the objection of the defendant "for all purposes pertaining to the value of the stocks." They all qualified as experts, experienced for many years in buying, selling, analyzing and valuing stocks, and testified that the stocks in question were not "listed" and were without an "active" market, and were allowed to give their opinions based upon the foregoing sources of information supplemented by their own experience, knowledge and general information regarding business and financial conditions at and about the times of the sales complained of.

The admission of this testimony was not erroneous. These witnesses were experts upon the subjects under investigation and the sources of their information were, as found by the trial court, legitimate and proper. Their conclusions were for the most part that the stocks were worth not over one stated figure or under another. Conclusions so reached were admissible. *Henry* v. *Kopf,* 104 Conn. 73, 80, 131 Atl. 412; *Vig-*

*liotti* v. *Campano,* 104 Conn. 464, 466, 133 Atl. 579; 3 Chamberlayne on Evidence, § 2152.

The defendant's claims were that it was incumbent upon the plaintiffs to prove actual value of the stock "in accordance with the actual condition of the company issuing it." Such evidence, if available, is clearly admissible. *Cabble* v. *Cabble,* 111 N. Y. App. Div. 426, 433; *Vail* v. *Reynolds,* 118 N. Y. 297, 23 N. E. 301. But while an inventory and appraisal, for example, would doubtless be of some assistance, it does not follow that it is the only basis upon which a jury can properly reach a conclusion upon the actual value of the stock. Obviously these plaintiffs were not in a position to obtain figures upon the actual material and financial condition of these corporations, situated in another State, and a requirement that they do so would have been practically prohibitive. The law does not require the impossible and if the usual means of proof are not available other means will and should be found. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 Atl. 91; *Hagar* v. *Norton,* 188 Mass. 47, 52, 73 N. E. 1073. It is fair to assume, under the circumstances of this case, that such figures were within the reach of the defendant. The failure to produce them as an offset to the plaintiffs' claims of value, furnishes a further fair inference that they were not favorable to the defendant's case.

The defendant insists that all evidence of "market value" was irrelevant and inadmissible to prove "actual value." While not necessarily conclusive, it is nevertheless admissible as an element to be considered by the jury, and as to certain classes of property it might be sufficient evidence. *Warner* v. *Benjamin,* 89 Wis. 290, 62 N. W. 179. The fair market value of any property is necessarily more or less a matter of estimate.

In fixing the "true and actual valuation" of property

for taxation under General Statutes, § 1183, the legislature has provided that this shall be deemed to be "the fair, market value thereof." General Statutes, § 1197. In a recent case in this court it was held that "market value" could not be established by proof of replacement value, cost and depreciation, because the term "market value" presupposes a market with willing sellers and able and willing buyers. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 122 Atl. 91. The market value may be the same as the actual value of a given property. It was held in that case that original costs and depreciation and also replacement values were relevant as evidence of actual value, though not necessarily conclusive; and we added (p. 338): "For that particular purpose [fixing actual value] all of the evidence before the court should have been considered and weighed, and to it should have been applied any proper and available method of valuation."

The charge of the court upon this part of the case, and to which the defendant excepts, was favorable to the defendant.

The appellant likewise excepts to the charge of the court upon the second element necessary to determine the damages, viz., the value of these shares if they had been as represented, that the jury were privileged to find this to be the price the plaintiffs in fact paid. That was the figure which the defendant by its agents then asserted to be its value. We see no reason why the jury were not entitled to consider this as fixing the necessary second element for determining the damages.

There is a claim of error based upon the refusal of the court to submit certain interrogatories to the jury. The case went to the jury upon five counts in the complaint, each having to do with one of the sales of stock. The proposed interrogatories were identical in

character and purpose, requiring the jury to answer as to each count what value they fixed for the stock referred to in that count, at the time of sale, and what its value would have been if it had been as represented.

Our rule as to the submission of interrogatories to the jury was stated in *Freedman* v. *New York, N. H. & H. R. Co.,* 81 Conn. 601, 612, 71 Atl. 901, as follows: "In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require." Citing *Dorr* v. *Fenno,* 29 Mass. (12 Pick.) 521; *Spaulding* v. *Robbins,* 42 Vt. 90. Such a ruling is unreviewable unless it be an unreasonable exercise of discretion under the circumstances. Where the complaint contains two or more counts, or when two or more issues are presented in one count, "the defendant may protect itself from any possible injustice" by the submission of interrogatories. *Aaronson* v. *New Haven,* 94 Conn. 690, 697, 110 Atl. 872; *Worth* v. *Dunn,* 98 Conn. 51, 63, 118 Atl. 467.

This protection should also be extended to a defendant where there are two or more causes of action and some of them may be authorized by law and supported by credible testimony and others not, the reason being that a general verdict upon such a complaint imports a conclusion that all the issues have been found for the plaintiff, and it cannot be known that the verdict was based upon the valid cause of action. *Wladyka* v. *Waterbury,* 98 Conn. 305, 313, 119 Atl. 149. Furthermore, a proper interrogatory should be responsive to a count or should, in itself, present a complete cause of action where this can be done in brief form, and those which concern causes of action not reasonably proven, or which unnecessarily split up the several causes of action into several interrogatories

concerning the same cause, should not be submitted. *Callahan* v. *Jursek,* 100 Conn. 490, 494, 124 Atl. 31.

In the case at bar, the interrogatories requested did not seek to test the plaintiffs' right to a verdict on each count or cause of action. The fraudulent character of the representations, which were practically identical as to each stock, was the test of the right of recovery and this applied to all counts alike. This single issue was decided for the plaintiffs on all the counts by the general verdict and an interrogatory as to each count would not have affected this result. The verdict found the amount of damages due on each count. The proposed interrogatories sought only to disclose the mathematical calculation by which the jury determined the verdict upon each count. An answer to such an interrogatory would not have settled any cause of action, and we cannot say that the refusal of the court to submit these interrogatories was an abuse of discretion.

A careful study of the record and of the numerous reasons of appeal does not disclose any question of serious character not covered by what we have said, nor any error of sufficient importance to justify us in interfering with the judgment rendered.

There is no error.

In this opinion the other judges concurred.