ALFRED MORRELL *vs.* WILLIAM HERBERT WILEY ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 5th—decided April 3d, 1935.

*William H. Comley,* with whom was *Raymond E. Baldwin,* for the appellant (plaintiff).

*David S. Day,* with whom was *Norman King Parsells,* for the appellees (defendants).

HAINES, J. Two of the original defendants, The Connecticut Enamel & Paint Company and Anna Checkley Wiley, were dropped and the case was tried with the above named William H. Wiley as sole defendant.

The complaint recites that in the latter part of 1923 the defendant represented to the plaintiff that he had obtained from one Hay, a formula for the manufacture of paint, the practicability of which for commercial use had been thoroughly established and which had been in the possession of the Hay family for a long time, and large profits could be made if the plaintiff would contribute $20,000 toward the establishment of a plant for making paint under that formula; that during 1923 and 1924 the defendant continued to urge upon the plaintiff the value of the formula; that it had passed the experimental stage and had proved to be a valuable and profitable investment; and further urged the plaintiff to contribute the above named sum "to the establishment of a plant for the manufacture of paint;" that without the participation of the plaintiff the defendant caused a corporation to be organized "for the specific purpose of manufacturing paint," and thereupon renewed the representations to the plaintiff as to the formula and its value and the prospects of profits, and further represented that the corporation already formed was prepared to manufacture paint in accordance with the formula and make great profits if the necessary funds were available; that the plaintiff relied upon these representations as to the origin of the formula and its actual employment in a profitable business and its value, and believing them to be true, subscribed $20,000 to the stock of the corporation.

It is further alleged that these representations were false and known to the defendants to be false, in that there was no such person as Hay, no such formula which had been used in the profitable manufacture of paint and no foundation for the claim that the formula had a demonstrated market value or that it could be successfully applied in profitable manufacture, but that all these representations were made with the sole purpose of inducing the plaintiff to contribute the $20,000; and finally, that the stock was and is without value, and the plaintiff has lost the $20,000 by the above fraudulent representations of the defendant.

Two defenses were pleaded, a general denial and waiver, the latter based on the allegations that the plaintiff was elected on March 13th, 1924, and qualified as a director of the corporation, and upon that date had full knowledge or the opportunity of obtaining knowledge of the facts of the matter of which he complains; that from the time of his election until the corporation discontinued active operations about January 1st, 1926, the plaintiff remained a director, participating in the management and operations of the company; that on September 24th, 1924, he was present and joined in a vote to increase the stock of the corporation, changing the par value and the amount of the shares and authorized the board of directors to accept subscriptions for unissued preferred and common stock; that thereafter he exchanged his own stock for new stock; that a subscription for $10,000 of the preferred stock by Dean Frye of London, England, was accepted with the approval and consent of the plaintiff and with like approval and consent was used by the corporation in the conduct of its business; that on May 5th, 1925, the plaintiff voted in favor of again changing the number and par value of the shares; that on May 26th, 1925, the plaintiff was present and

voted in favor of negotiating a contract with Schwartz & Company to sell, through them, ten thousand shares of the new common stock to the public. Finally, it is alleged that the plaintiff has never disaffirmed or disavowed his purchase of the stock but has retained its ownership, and by these acts, has waived all rights of action against the defendant alleged in the complaint.

Upon a trial of these issues the jury gave a verdict for the plaintiff for $12,010. It was set aside by the court on two stated grounds: (a) because the jury could not reasonably or properly have found from the evidence that any damage had proximately resulted from the fraud alleged, and (b) that there was no evidence before them from which the jury could have determined a specific amount of damages without entering the field of pure speculation. This appeal presents the question whether the trial court was justified in setting aside the verdict on these grounds. It also presents the broader question whether the ruling of the trial court is sustainable on any ground. *Dorfman* v. *Martin & Crawford Motor Co., Inc.*, 105 Conn. 774, 775, 136 Atl. 565; *Fitch* v. *Hartford*, 92 Conn. 365, 367, 102 Atl. 768.

Without discussing whether the allegations of fraud are sufficiently specific to warrant an action, the theory on which the plaintiff presented his case apparently was that he was deceived by the representations of the defendant into believing that the formula was valuable and would be used by the company to make a profit for the stockholders, and that, so believing, he had bought the stock which proved worthless, causing the loss of his entire investment. The plaintiff himself testified that in making his investment he relied upon the representations of Wiley as to the possibilities of the formula.

The undisputed evidence is that the corporation was

formed about February 1st, 1924, and that the plaintiff purchased his stock March 13th, 1924; that on February 13th, 1924, the defendant wrote a letter to the plaintiff explaining that McClurg, the third party in the enterprise and the only practical paint man, was not sure the company would use the formula for anything but cheap paint, and giving his reasons, one of which was that he did not want to use any oil mixtures in the best quality paints, but would test the formula out. In another letter, three days later, the defendant explained to the plaintiff that he and the plaintiff and McClurg would all go in on an equal one-third basis of control, an arrangement which was ultimately carried out, each holding forty-six shares of the common stock, which was the only class of stock having a vote. On March 13th, 1924, the day he subscribed for stock, the plaintiff was made vice-president of the corporation and one of the directors, and thereafter while participating in the active management of the corporation, having a key to the factory and going there every Saturday, the plaintiff, as he himself testified, was told from time to time that it was for McClurg to say if and when the formula was to be used. It is thus conclusively shown that the plaintiff knew during this period that the company was not using the formula.

If we adopt the assumption made by the trial court that perhaps one of the representations made by Dr. Wiley was false and was relied upon by the plaintiff in purchasing this stock and that it constituted a legal ground for a claim for damages, two questions are at once presented to us in considering whether the jury could reasonably have rendered a plaintiff's verdict as they did. (a) Was there evidence to establish that the plaintiff suffered a loss which was the direct and proximate result of the false representations? Only damages thus shown to have resulted, are recoverable.

*Austin* v. *Barrows,* 41 Conn. 287, 297; *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 136, 39 Atl. 104; *Dwyer* v. *Redmond,* 100 Conn. 393, 404, 124 Atl. 7; 4 Sutherland, Damages (4th Ed.) § 1175; 26 C. J. p. 1178, § 86. (b) Can the verdict be sustained upon the evidence if the correct rule of damages be applied? The rule in this State in cases of this kind is that the damages are measured by the difference between the actual value of the property received and its value had it been as represented, with any consequential damages resulting directly from the fraud. *Gustafson* v. *Rustemeyer,* supra, at page 137; *Dwyer* v. *Redmond,* supra, at page 406; *Okoomian* v. *Brandt,* 101 Conn. 427, 430, 126 Atl. 332; *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 410, 130 Atl. 794; *Dombroski* v. *Active Automobile Exchange, Inc.,* 103 Conn. 759, 760, 131 Atl. 404; *Ford* v. *Dubiskie & Co., Inc.,* 105 Conn. 572, 578, 136 Atl. 560; *Fairfield F. & M. Co., Inc.* v. *Griffin,* 108 Conn. 511, 513, 144 Atl. 43; *Slachter* v. *Olderman,* 116 Conn. 156, 158, 164 Atl. 202; *Piascyk* v. *Malon,* 116 Conn. 418, 425, 165 Atl. 352. This rule is supported by the weight of authority in this country. 27 C. J. p. 92, § 243, and cases cited.

As to the first question: The plaintiff claims his recoverable loss was the $20,000 which he invested in this stock. This proposition is sustainable only if the evidence shows that he lost that amount as the proximate result of the misrepresentation made to him. It is at once apparent that if he was deceived into buying stock which at the time he bought it was absolutely valueless, the direct result of the deceit was the loss of the full amount which he paid. *Chesrown* v. *Black,* 155 Ill. App. 422; *Heed* v. *Pierce,* 8 Mo. App. 569; *Anderson* v. *Heasley,* 95 Kan. 572, 148 Pac. 738; *Van de Wiele* v. *Garbade,* 60 Ore. 585, 591, 120 Pac. 752. However, the evidence conclusively disproves any

claim that the stock bought by the plaintiff was valueless when he bought it. It is apparent that when he turned over the $20,000 to the company and received his stock, the company then had as tangible assets not only this money, but real estate and such other assets as the other interested parties had contributed or bound themselves to contribute, and presumably also, the formula. It cannot be denied that the plaintiff ultimately lost the entire $20,000, but it is equally undeniable that that loss, in whole or in part, took place as the result of subsequent events. These developed between the time the plaintiff bought the stock and the final failure of the company. The cause of the company's failure and the consequent loss of all value in the stock, is not explained by the evidence. It would be pure speculation to say that the lack of value in the formula or the lack of use of the formula was the cause. In fact the evidence is all to the effect that the failure was due to causes wholly unconnected with the formula. Though the plaintiff testified that he was induced to buy the stock by reliance upon the possibilities of the formula, yet the evidence shows that he knew, before he purchased it, that the formula was not to be used at first and perhaps not at all. He thereafter took part in managing the company for the two years it was in operation, knowing all that time that the formula was not being used. There is no proof as to whether the formula was or was not in fact valuable, and nothing to show that its use would have contributed to the success of the company, or resulted in substantial profits, rendering the plaintiff's stock worth as much or more than it cost. It is an established principle that a plaintiff cannot recover profits which might have been realized if he had not been deceived, unless there is evidence by which such profits can be estimated with reasonable certainty. *Ball* v.

*Pardy Construction Co.,* 108 Conn. 549, 551, 143 Atl. 855; *Tompkins, Inc.* v. *Bridgeport,* 94 Conn. 659, 685, 110 Atl. 183; *High* v. *Berret,* 148 Pa. St. 261, 264, 23 Atl. 1004; *Maguire* v. *Kiesel,* 86 Conn. 453, 461, 85 Atl. 689; 1 Sutherland, Damages (4th Ed.) § 70.

As to the second question: There was no evidence as to what the stock would have been worth had it been as he claims it was represented to him, except the price which he paid for it, but the jury might have accepted this figure as fixing its value. *Ford* v. *Dubiskie & Co., Inc.,* 105 Conn. 572, 573, 136 Atl. 560.

We observe that the plaintiff urges the twofold claim that the rule of damages to which we have referred would result in a denial of justice to him because of the difficulty of proving what the value of the stock at the time of the purchase would have been had the formula been as represented, and that being induced by fraud to purchase the stock, his actual damage must be held to be the full amount he paid for it. The integrity of the rule cannot be destroyed, however, by a difficulty in conforming to it which may inhere in the situation. Moreover, it does not appear that such difficulty is insuperable in the present case. "The application of the rule will not be prevented by the difficulties which might be presented in estimating the value which the property would have if as represented." *Morse* v. *Hutchins,* 102 Mass. 439, 440; 27 C. J. p. 94, § 243. As already pointed out, the plaintiff's "actual damage" could not be the "full amount he paid" for the reason that the stock he received was not then without value.

We conclude from all the evidence of record, that the jury could not, reasonably and without speculating, have determined the difference in value between the stock received and what it would have been worth if it had been as represented; and further, that the

evidence was not such as to justify a legitimate conclusion by the jury that the plaintiff suffered more than nominal damages as the direct and proximate result of misrepresentations by Dr. Wiley.

The defendant filed a bill of exceptions addressed to the failure of the trial court to charge in certain respects as requested and to certain portions of the charge as given. The consideration of only one of these is likely to be of assistance upon a new trial, since another judge would probably not follow exactly the same line of approach as in the present case. The exception referred to is the statement of the rule regarding damages, and as to this it is sufficient to call attention to the correct rule which we have given, and no purpose would be served by a further discussion of the bill of exceptions.

There is no error.

In this opinion the other judges concurred.