WILLIAM FRANCHEY ET AL. *v*. ARTHUR R. HANNES ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued December 2, 1964—decided February 9, 1965

*Wilbur Duberstein,* with whom was *Richard Shaffer,* for the appellants (defendants).

*Edwin K. Dimes,* for the appellees (plaintiffs).

ALCORN, J.  The plaintiffs brought this action to recover damages for the defendants' alleged fraudulent misrepresentations in the sale of a dwelling house and lot to the plaintiffs.  At the trial, the court first denied and later granted the plaintiffs' motion to amend the complaint by adding a second count claiming damages for fraudulent nondisclosure.  The allowance of this amendment is assigned as one ground of error.  After allowing the amendment, the court reversed an earlier ruling excluding testimony concerning conversations which had occurred between the date of the signing of the contract of sale and the actual transfer of title.  This action is assigned as another ground of error.  The defendants objected that the amendment came too late and that the evidence was inadmissible under either the original complaint or the new second count because conversations subsequent to the completed contract of sale could not have induced the sale.  It was within the court's discretion to allow the amendment.  Practice Book §§ 132, 134.  There was no error in the evidential ruling for reasons which will later appear.

The defendants make a wholesale attack on the finding, which we have repeatedly discountenanced. *Adamsen* v. *Adamsen,* 151 Conn. 172, 173, 195 A.2d 418.  The finding is not subject to correction, and, from it, the following appears:  The defendants had owned a house located on 1.05 acres of land since January, 1955.  About fifty feet northwest of the house was a circular swimming pool, about twenty-two feet in diameter, made of reinforced concrete.  In 1956, the defendants constructed a macadam driveway on the property.  In July, 1957,

they had the property surveyed and mapped. The survey map showed that a large portion of the macadam driveway and about one foot of the concrete apron of the pool encroached upon a triangular .11-acre parcel of land belonging to the defendants' next door neighbor. The northerly line of this triangular parcel was marked by a broken line of stones resembling a stone wall, to the south of which, and within the triangular parcel, was a rock garden. The surveyor drove a spike in the middle of the macadam driveway to mark the corner of the neighbor's property and drove half-inch iron pipes along the southerly and easterly sides of the triangular parcel to mark the defendants' true boundary. The spike was not readily visible, and the pipes were driven flush with the ground.

The defendants offered their property for sale in 1958 and, in listing it with realtors, did not disclose the encroachments on their neighbor's land. The defendants vacated the premises in June, 1958. In October, the plaintiffs were shown over the grounds by one of the men who had built the house for the original owner. The plaintiffs became interested in the property without inquiring as to the boundaries or dimensions and visited it a second time. Later that October, William Franchey and Arthur R. Hannes met in New York City and, at that meeting, Hannes indicated that the property was bounded by stone walls on all sides and that the north boundary was the broken line of stones or wall. This was the wall which the 1957 survey had shown as the north line of the .11-acre triangular parcel belonging to Hannes' neighbor. Hannes did not disclose the existence of that survey map or the encroachments which it depicted. At the conclusion

of the meeting Franchey made an offer for the property which Hannes accepted. With no further disclosures concerning the north boundary of the property or the encroachments, the parties met at the office of the defendants' attorney on November 22, 1958, where a formal contract of sale was signed and a deposit paid. The transfer of title was scheduled for January 2, 1959, but the parties orally agreed that the plaintiffs could move in before Christmas, 1958.

After signing the contract, the parties had lunch together and then drove out to the property. While there, the defendants did not disclose the encroachment of their driveway or pool on their neighbor's property, and Mrs. Hannes implied that the rock garden, which she claimed to have planted, was on their land. Hannes stated that he did not know where the boundary stakes were. The plaintiffs assumed, and the defendants intentionally contributed to the assumption, that the driveway, the pool and the rock garden were on the land to be conveyed.

The plaintiffs were not represented by counsel and did not have the title searched or the property surveyed. The transfer of title took place early in January, 1959. On the morning of the day set for the transfer of title Mrs. Franchey found a copy of the 1957 survey map wrapped with some house plans on a closet shelf in the house. Her husband was not at home, and she did not recognize what it was or appreciate its significance. She met her husband at the railroad station and drove to the office of the defendants' attorney. The defendants were not present. Mrs. Franchey mentioned the map she had found, but which she had not brought with her, and the defendants' attorney produced

another map which showed no encroachments and assured the plaintiffs there was "nothing to worry about". The property was transferred and paid for and the deed was recorded with no disclosure by the defendants, either to the plaintiffs or to the defendants' attorney, of the encroachments shown on the 1957 survey map. Subsequently, in February, 1959, the plaintiffs discovered, for the first time, from their neighbor, the true situation regarding their north boundary. Thereupon they talked to Mrs. Hannes by telephone, and she said: "We wondered how long it would take you to find out about this."

On these facts, the court concluded that there had been no actionable fraudulent misrepresentation, but that the defendants had a duty, before signing the contract of sale and also before transferring title, to disclose the encroachments known to them but that they intentionally concealed these facts, as a result of which the plaintiffs were induced to buy the property to their detriment. The court's finding, which is unattacked, as to the representations made by Hannes at the meeting with Franchey in late October, 1958, would appear, at least as to that defendant, to support a conclusion that a fraudulent material misrepresentation of fact had been made. The court did not so conclude, however, and that element of the case is not an issue before us. The appeal asserts only that the court erred in reaching the conclusion that both defendants are liable in damages for a fraudulent nondisclosure. Incidental to this basic claim is the assigned error in the evidential rulings in connection with the allowance of the amendment earlier referred to, namely, that conversations subsequent to the signing of the contract of sale are immaterial and inadmissible.

We consider first the evidential question. It is clear that, at least until title passed and the purchase price was paid, the plaintiffs had the right to refuse to accept a deed and to recover any provable damages. An action will lie for a fraudulent nondisclosure which causes one to continue in a course of action. *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.,* 142 Conn. 313, 319, 113 A.2d 863. Since the court found a failure to disclose prior to the signing of the contract of sale, evidence of a continuation of that course of conduct up to the date of the transfer of title was admissible.

We turn now to the court's ultimate conclusion that the defendants have incurred a liability to the plaintiffs for a fraudulent nondisclosure. As already indicated, the trial court concluded that the defendants had not made an actionable, deliberate or reckless misstatement of fact as in cases such as *Warman* v. *Delaney,* 148 Conn. 469, 473, 172 A.2d 188, *Clark* v. *Haggard,* 141 Conn. 668, 672, 109 A. 2d 358, *White* v. *Miller,* 111 Conn. 53, 57, 149 A. 237, *Macri* v. *Torello,* 105 Conn. 631, 633, 136 A. 479, and *O'Neill* v. *Conway,* 88 Conn. 651, 653, 92 A. 425. See also Restatement, 3 Torts § 525. It concluded, however, that the facts bring the case within the exception to the rule that mere silence is not actionable in a transaction in which the parties deal at arm's length unless the circumstances or the existence of a confidential relationship gives rise to a duty to speak. See cases such as *Egan* v. *Hudson Nut Products, Inc.,* 142 Conn. 344, 347, 114 A.2d 213; *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82; *Behrmann* v. *Behrmann,* 110 Conn. 443, 446, 148 A. 363; *Gayne* v. *Smith,* 104 Conn. 650, 652, 134 A. 62; *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 393, 62 A. 622. It then proceeded to

find, in the circumstances of this case, a duty to speak. The operative factor producing this result seems to have been the physical appearance of the property. This factor alone was insufficient to give rise to a duty to disclose.

The facts of the case bring it, rather, within the widely accepted rule that, although a vendor may, under the circumstances, have no duty to speak, nevertheless, if he does assume to speak, he must make a full and fair disclosure as to the matters about which he assumes to speak. He must then avoid a deliberate nondisclosure. *Kronfeld* v. *Missal,* 87 Conn. 491, 493, 89 A. 95; *Rogers* v. *Warden,* 20 Cal. 2d 286, 289, 125 P.2d 7; *Macco Construction Co.* v. *Fickert,* 76 Cal. App. 2d 295, 299, 172 P.2d 951; *Baker* v. *Meenach,* 119 Ind. App. 154, 165, 84 N.E.2d 719; *Smith* v. *Pope,* 103 N.H. 555, 559, 176 A.2d 321; *Dahl* v. *Crain,* 193 Ore. 207, 224, 237 P.2d 939; *Rummer* v. *Throop,* 38 Wash. 2d 624, 635, 231 P.2d 313; 23 Am. Jur., Fraud and Deceit, §§ 82, 83; 91 C.J.S. 916, Vendor and Purchaser, § 57. From the court's finding it is apparent that these plaintiffs, upon viewing the property, reasonably were led to assume, from its physical appearance, that at least the driveway and the pool were within the boundaries of the land they were interested in buying. Instead of remaining silent, Hannes, at the conference in New York, represented that the broken stone wall was the northerly boundary. Later, when the parties visited the premises together, Hannes disclaimed knowledge of the location of the boundary markers and Mrs. Hannes stated that she had planted the rock garden. Neither of the defendants disclosed the encroachments of which they were then aware. Thus, there was a failure to disclose the whole truth about the

very subject concerning which they had assumed to speak. The court found this action to be intentional and that its result was that the plaintiffs were induced to buy the property. The defendants' conduct was the equivalent of a false representation. *Farrar* v. *Churchill,* 135 U.S. 609, 617, 10 S. Ct. 771, 34 L. Ed. 246. The court therefore reached a correct result on the issue of liability, but for a wrong reason. This constitutes harmless, not reversible, error. *Union & New Haven Trust Co.* v. *Thompson,* 134 Conn. 607, 612, 59 A.2d 727; Maltbie, Conn. App. Proc. § 36.

The defendants argue that the plaintiffs must be denied recovery because of their own dereliction in failing to engage counsel to represent them or to make a reasonable effort to discover the true facts, particularly after finding the survey map on the eve of the transfer of title. On the facts of this case that claim cannot prevail. *Presta* v. *Monnier,* 145 Conn. 694, 700, 146 A.2d 404; *Ford* v. *H. W. Dubiskie & Co.,* 105 Conn. 572, 577, 136 A. 560; *Gallon* v. *Burns,* 92 Conn. 39, 42, 101 A. 504.

We turn then to the court's determination of the issue of damages. The finding is that, being unable to buy additional land from their neighbor, the plaintiffs eliminated the existing pool and built a slightly larger one twenty feet south of their true boundary at a cost of $5400.

Beyond the costs relating to the pool, we are unable to determine what evidence the court considered in arriving at the award of $4350 damages. For the method of computation the finding refers us to seven paragraphs of the memorandum of decision which are incorporated by reference in the finding. We have discountenanced the practice of making the memorandum of decision a part of the

finding. Practice Book § 650; *Goldblatt* v. *Ferrigno,* 138 Conn. 39, 41, 82 A.2d 152; Maltbie, Conn. App. Proc. § 152. From the portions of the memorandum referred to, however, it would appear that the court discarded as unreliable the testimony of real estate experts offered by both the plaintiffs and the defendants. Thereupon, from some unexplained source, the court arrived at general damages of $3000 to which it added one quarter of the expense of relocating the pool, or $1350, as consequential damages. We are unable to discover the basis for arbitrarily allowing the plaintiffs one quarter of the cost of the new pool. The plaintiffs were entitled to recover the difference in value between the property actually conveyed and the value of the property as it would have been if there had been no fraudulent nondisclosure, together with any consequential damages resulting directly from the fraud. *Clark* v. *Haggard,* 141 Conn. 668, 673, 109 A.2d 358; *Morrell* v. *Wiley,* 119 Conn. 578, 583, 178 A. 121. The general damages would thus consist of the difference between the value of the property if the north boundary had been the broken stone wall and the value of the property as the boundary actually was. Any additional damages would be consequential and would embrace any further damages proximately resulting from the nondisclosure.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover such damages as they may prove on a new trial limited to the issue of damages.

In this opinion the other judges concurred.