[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
1. On July 14, 1988, the Plaintiffs and the Defendant, Frances T. Goldblatt entered into a Buy-Sell Agreement pursuant to which the Plaintiffs were to purchase property known as 22 Maynard Hill Road in Preston, Connecticut from the Defendant, Goldblatt.
2. The document called for "Approximate Acreage 1.6 + — / --."
3. The purchase price for the premises was $150,000.00 with Buyers' performance contingent upon inspection of the premises by a professional house inspector with satisfactory results as to Buyers' specifications.
4. The Buy-Sell agreement contained a paragraph which said:
INSPECTION OF PREMISES: CT Page 4991
 The Buyer(s) agree(s) that he has examined the premises and that he is fully satisfied with the physical condition thereof and that neither the Seller(s) nor any representative of the Seller(s) has made any representation upon which the Buyer(s) relies, with respect to the condition of the property covered by this Contract, and accepts the property as is.
5. Shortly after having entered into the Buy-Sell Agreement the Plaintiffs discovered that the acreage was not 1.6 acres but was approximately one half acre.
6. The Plaintiffs determined to go ahead with their purchase.
7. The Plaintiffs had relied upon the representation that the lot size of the premises was 1.6 acres more or less and that representation was a factor in their agreeing to purchase the premises.
8. The Plaintiffs arranged for Defendant Sound Home Inspections, Inc. to do a home inspection and to furnish a written report to the Plaintiffs concerning the condition of the subject premises.
9. The premises consisted of a so-called California Ranch House and an attached "in-law apartment".
10. Defendant Thomas K. Morgan was the only inspector employed by Sound Home Inspections, Inc. and was that corporation's president.
11. Defendant Morgan made his inspection on July 29, 1988 and submitted his report to the Plaintiffs on or about August 8, 1988.
12. The Plaintiffs relied on the report of Sound Home Inspections, Inc. to confirm their desire to purchase the subject premises.
13. Among other things, the Defendant Sound Home Inspections, Inc. indicated that the water service was unsatisfactory.
14. Defendant Goldblatt or her agent reassured the Plaintiffs that such deficiency as to the water service had been remedied.
15. Defendant Goldblatt had problems with the adequacy of the water service in the house and had consulted with a well driller who recommended alterations and improvements to the water system.
16. Defendant Goldblatt concealed this information from the Plaintiffs. CT Page 4992
17. The information concerning Defendant Goldblatt's knowledge of the problems with the water system came to light as a result of the coincidence of the Plaintiffs also calling in the LaFramboise Well Drilling Company which was represented by Mr. Earl Semmelrock, its Vice President.
18. When Mr. Semmelrock arrived at the subject premises at Plaintiffs' request, he remembered having been there and that everything seemed to be the same as when he had been there to meet with Mrs. Goldblatt.
19. Mr. Semmelrock told Defendant Goldblatt to either deepen the existing well or drill a new well. This work was not done by Mrs. Goldblatt.
20. The Plaintiffs engaged LaFramboise Well Drilling Company to do the necessary work on the water service system and paid the sum of $2,265.00, a reasonable amount for the work.
21. The Defendant Sound Home Inspections, Inc. gave the Plaintiffs sufficient notice of roof problems such that none of the Defendants should be charged with damages arising from the replacement of the roof.
22. Defendant Morgan gave to the Plaintiffs a separate building analysis report on the "in-law apartment". In the building analysis report concerning the "in-law apartment" the Defendant Morgan told the Plaintiffs that the crawl space under the "in-law apartment" was readily accessible and was satisfactory.
23. The crawl space was readily accessible for view although Defendant Morgan did not find the hatch that allowed easy access to the crawl space.
24. The condition of the crawl space was not satisfactory and a careful examination would have revealed serious deficiencies.
25. The Plaintiffs presented Melvin Jetmore, Jr., Director of Public Works for the City of New London and the President of General Inspection Services, Inc., as their expert witness concerning the adequacy of the report by Sound Home Inspections, Inc.
26. The major deficiency which Mr. Jetmore found in the inspection by Mr. Morgan was the condition of the "in-law apartment". Mr. Jetmore testified that the "in-law apartment" was uninhabitable, should be razed and rebuilt. He estimated the cost of this at 50-55 thousand dollars. No estimate was given as to how such a reconstruction would affect the overall value of the property. CT Page 4993
27. Expert testimony was presented to the effect that the property was worth $104,000.00 at the time of the agreement to purchase, thus valuing the 1/2-acre house lot at $46,000.00 less than a 1.6 acre lot.
28. No evidence was presented as to relative values of back land, wet land, wooded land, nor was there any description of what the land would have looked like had there been 1.6 acres of land.
29. In 1987 and 1988, lots were selling in Preston at prices ranging from $27,600.00 per acre to $29,530.00 per acre according to sales reviewed by J. Jerome Silverstein, the expert presented by the Plaintiffs. Twenty-Two Thousand Five Hundred and No/100 ($22,500.00) Dollars per acre was a fair and reasonable price for house lots at or about the time of the purchase by the Plaintiffs.
30. The value of the property at the time of the Buy-Sell Agreement was $150,000.00 with a lot of one half acre.
31. If the premises had a 1.6 acre lot, the value would have been increased. The premises, including a 1.6 acre lot, would have been worth $158,750.00, arrived at by taking $36,000.00 as the value of a 1.6 acre lot and subtracting $11,250.00 as the value of an unimproved one half acre lot and subtracting from that the sum of $16,000.00 as the value of site improvements.
32. The only estimate for the value of the "in-law apartment" was that presented by Mr. Jetmore, $50,000.00 to $55,000.00, the cost of removal and rebuilding of the "in-law apartment". But such new construction would add at least $40,000.00 to the value of the property. The Plaintiffs have been damaged by the faulty building analysis report in the amount of $10,000.00. Neither Defendant Morgan nor Defendant Sound Home Inspections, Inc. committed any deceptive act which would be an Unfair Trade Practice under the Connecticut unfair Trade Practices Act.
33. Defendant Morgan and Defendant Sound Home Inspections, Inc. were negligent, both in the inspection of the "in-law apartment" and in the report rendered thereon.
34. It was stipulated by the parties that $750.00 was a reasonable fee for the testimony of Mr. Silverstein.
CONCLUSIONS AND LAW APPLICABLE
1. The essential elements of an actual fraudulent misrepresentation are that a false representation is made as a statement of fact, the representation is untrue and known to be untrue by the party making it, it is made to induce the other party CT Page 4994 to act in reliance upon it and the other party does act on it to his injury. Ceferatti v. Boisvert, 137 Conn. 280; Miller v. Applebey,183 Conn. 154; Wedig v. Brinster, 1 Conn. App. 123.
2. "Fraud, of course, is not to be presumed and must be strictly proven by clear, precise and unequivocal evidence." DeLuca v. C. W. Blakeslee and Sons, Inc., 174 Conn. 535, 546; Creelman v. Rogowski, 152 Conn. 382, 384.
3. The intent to defraud involves a state of mind and is usually proven by circumstantial evidence. Intention is a mental process, and of necessity it must be proved by the statement or acts of the person or persons whose acts are being scrutinized. DeLuca v. C. W. Blakeslee and Sons, Inc. supra.
4. A person's intention in any regard is to be inferred from his conduct and ordinarily can be proven only by circumstantial evidence. It is within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences. Id.
5. Fraud may be proved by proof of an innocent misrepresentation, if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. C. Richard v. A. Waldeman and Sons, Inc., 155 Conn. 343, 356.
6. Defendant Goldblatt could have refused to answer any questions about the water system, leaving the Plaintiffs to depend upon the results of the building analysis report. However, she failed to remain silent and either directly or through her agent reassured the Plaintiffs that there was not a problem with the water system. She failed to tell the Plaintiffs of the recommendations of LaFramboise Well Drilling Company. "The facts of the case bring it, rather, within the widely accepted rule that, although a vendor may, under the circumstances, have no duty to speak, nevertheless, if he does assume to speak, he must make a full and fair disclosure as to the matters about which he assumes to speak. He must then avoid a deliberate nondisclosure." Franche v. Hannis, 152 Conn. 372, 378.
7. The Plaintiffs are entitled to recover the difference in value between the property as actually conveyed and the value of the property as it would have been if there had been no fraud, together with any consequential damages resulting directly from the fraud. Id., 381.
8. The Plaintiffs are entitled to damages because of the deception by Defendant Goldblatt in regard to the size of the house lot, which was proven by clear, convincing and uncontradicted evidence. The loss of the benefits of the bargain is one of the elements of damages which the Defendant Goldblatt must be held to have contemplated as the natural and proximate result of her conduct CT Page 4995 and for which she therefore is answerable. The measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be. Gustafson et Ux. v. Rustemeyer, 70 Conn. 125, 137. It is found that the property was worth $150,000.00 at the time the Plaintiffs and the Defendant Goldblatt entered into the Buy-Sell Agreement. If the property had 1.6 acres as its house lot, the property would have been worth $158,750.00, thus damages were incurred by the Plaintiffs in the amount of $8,750.00, the benefit of their bargain.
9. Damages were incurred by the Plaintiffs for the deception as to the water system in the amount of $2,265.00. Again, this deception was proved by clear and convincing evidence. CT Page 4996
10. The negligence of Defendants Morgan and Sound Home Inspections, Inc. in regard to inspection of the "in-law apartment" was the proximate cause of loss to the Plaintiffs in the amount of $10,000.00, the net damages resulting from the removal and rebuilding of the "in-law apartment".
In summary, the Plaintiffs should recover the sum of $11,015.00 from the Defendant Goldblatt and should recover the sun, of $10,000.00 from the Defendants Morgan and Sound Home Inspections, Inc., jointly and severally.
RESPECTFULLY SUBMITTED, MARVIN M. HORWITZ, Attorney Trial Referee