[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of the purchase of a home by the plaintiffs (Mr. Mrs. Skoczylas, husband and wife) from the individual defendant Mrs. Norman. The other defendants are Connecticut Building Inspection Company, Inc. (hereinafter CBIC) and its President, Mr. William St. John, Sr.
The plaintiffs' claims against Mrs. Norman include misrepresentation, negligent misrepresentation, negligent infliction of emotional distress and Connecticut Unfair Trade Practices Act (CUTPA) violations. The claims against CBIC include negligence, negligent misrepresentation, negligent infliction of emotional distress and CUTPA violation. The claims as to Mr. St. John are those as to the corporate defendant under the theory of piercing the corporate veil.
The plaintiffs purchased the home at issue from Mrs. Norman on July 28, 1989 for $95,000. The plaintiffs maintain that the purchase price was $105,000 and represented this to their mortgage broker and on a "RESPA" form. The $10,000 rebate, subject of a separate agreement of the buyers and seller, resulted in a true sale price of $95,000. The property consists of a single family residence located at 24 Ray Street, Waterbury. The house was approximately 85 years of age at the time of conveyance.
The contract for the purchase of the home (Exhibit B) contained provisions indicating essentially that the home was sold "as is" and that the contract represented the parties' entire agreement. The contract also was contingent on a satisfactory home inspection by the buyers' representative. This inspection was performed by CBIC which reported that the home was generally in fair condition. (Exhibit E).
The plaintiffs visited 24 Ray Street, Waterbury on four (4) occasions (May, 1989, June 2, 1989, June 12, 1989 and June 28, 1989) prior to closing on the house.
The defendant Norman did not interfere with or restrict any inspections by plaintiffs and cooperated through her agents in facilitating the CBIC inspection. Mrs. Norman, through her real estate agents, made a prior inspection report of the premises available to plaintiffs. Mrs. Norman represented to the plaintiffs that she had corrected deficiencies noted in the previous report related to asbestos on cellar pipes and the electrical system. Mrs. Norman also reported that the fireplace had worked, but she stopped using it because of smoke generated from fires. At the time of inspection, contract and sale, it was closed off. A further representation was made by Mrs. Norman that previous roof leaks had been repaired. CT Page 6078
The CBIC report upon which plaintiffs relied, indicated the general aged but fair condition of the home, and the non-functional fireplace.
The plaintiffs testified that shortly after occupying the home, they were deluged with problems in their house. The plaintiffs complained of carpenter ants, a leaky roof, asbestos in the basement, non-functional fireplace, improperly vented and installed gas water heater, a rotted floor in the second floor bathroom, corroded and leaking plumbing pipes, improper plumbing in the first floor bath, structural support problems on a side of the house, first floor bathroom floor and support deterioration, blocked second floor window, unheated first floor bathroom and a crumbling retaining wall in the side yard.
The testimony of plaintiffs appeared to the court to substantially exaggerate the actual conditions of the home. Their reaction to problems which did develop were more with regard to their litigation posture, than a resolution of the issue. Upon confirming the existence of asbestos on a portion of the basement heating pipes, they removed their eight year old daughter from their home in January, 1990. The child remained out of the home at the time of trial. Subsequent to the removal of their daughter from their home, the plaintiffs took a foster child in their home. Following the disclosure of these events at trial, the plaintiffs in rebuttal, reported that the child was then removed from the home after their report of a serious asbestos problem to DCYS.
This disposition to look to litigation posture or potential damages characterized the plaintiffs' response to any problem with the property.
The plaintiffs also indicated at trial their frequent resort to litigation with family members, trades people and other persons with whom they had occasion to deal.
In observing the plaintiffs' testimony and comparing or contrasting it with the other evidence presented, the court concludes that the claims are exaggerated and incredible.
The house was 85 years old and sold "as is" for $95,000. It should not be a surprise or cause for litigation that the roof may develop leaks, that the pipes are corroded, some floors and posts have deteriorated, bathrooms are not up to the present day code, or that the house would need substantial work.
The house was structurally sound and functional as a home.
The inspection was performed for a $150 fee and confirmed the CT Page 6079 essential structural soundness and serviceable nature of its mechanical systems. Disclaimers were made as to the functioning of the fireplace and presence of termites or ants.
MISREPRESENTATION
The plaintiffs failed to sustain their burden of proof that any of the defendants made a false representation as to any fact which they knew or should have known was false. Bernard v. Gershman, 18 CA 652 (1985); Miller v. Appleby, 183 Conn. 51
(1981).
The court does not find that the condition of the retaining wall, constituted a material fact which Mrs. Norman failed to disclose. A fraudulent non-disclosure clearly can give rise to liability in the conveyance of realty, Franchey v. Hannes,152 Conn. 372, 379 (1965). However, it must amount to a form of concealment. "The non-disclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to entice the latter to enter into or refrain from entering into a transaction." Egan v. Hudsen Hat Products, Inc, 142 Conn. 344, 347-348 (1955).
The problem was a general deterioration of the retaining which was clearly observable or discoverable by plaintiffs in the course of their inspection. In addition to four (4) or more inspections, plaintiffs repeatedly drove by the property prior to the sale.
There was no hidden defect or "guilty knowledge". (Wedig v. Brinstee, 1 CA 123, 131 (1983)) on the part of Mrs. Norman.
There was no evidence as to Mrs. Norman's knowledge of the improperly vented gas heater, bathroom code violations or wood deterioration.
The blocked window, unheated bathroom, corroded pipes and carpenter ants were not material conditions and/or hidden defects.
The opportunity for inspection and investigation was not disputed at trial.
The defendant CBIC performed a minimal inspection as to the structural soundness and mechanical functioning of the residence. The court finds that it did not undertake any greater obligation to the plaintiffs.
The court finds that no representations as to carpenter ants were made by CBIC or St. John, and that the roof was not leaking at the time of the inspection. CT Page 6080
The plaintiffs' expert failed to establish that the home inspection required a report on the retaining wall in the side yard.
In that the court has found that there was no misrepresentation or negligence, the plaintiffs also fail on their claims for negligent misrepresentation and negligent infliction of emotional distress.
The CUTPA claim also fails as the plaintiffs failed to establish unfair methods of competition or unfair or deceptive acts or practices by the defendants.
Judgment enters for the defendants on all counts.
McWEENY, J.